**IN THE SIXTH JUDICIAL CIRCUIT COURT**
**IN AND FOR PINELLAS COUNTY, FLORIDA**

SAVE THE GARDEN, BROOKS GIBBS,
KELLY MYER, JESSICA ANDUJAR,
TONATIUH TELLO, JILL GIBBS,
WILLIAM MATHIS, and JANICE BASLER,

     *Plaintiffs*,

v.

CITY OF CLEARWATER,

     *Defendant*.

Case No. _____

/

## COMPLAINT

1. The Clearwater City Charter grants the People the right of initiative: to propose and vote on ordinances the City Council refuses to adopt. The Charter lays out initiative sponsors' obligations in collecting and submitting petitions, as well as the City Clerk's duties to process submitted petitions.

2. Plaintiffs attempted to exercise their right of initiative, filing their initiative with the City Clerk, circulating petitions, and submitting over 8,000 signatures for verification so that their proposal could go before the voters at the August 2026 primary election.

3. But the City Clerk failed to fulfil her duties. She rejected valid petitions, failed to give Plaintiffs the required notice as to why she rejected petitions, and gave Plaintiffs incorrect information about the rules they had to follow, severely hindering Plaintiffs' petitioning efforts.

4. As a result of the Clerk's illegal actions, on April 22, 2026, she certified that Plaintiffs' initiative effort had *not* attained the required number of signatures. A month later, the City Council ratified her decision. Plaintiffs bring suit to rectify the City's failures and vindicate their direct-democracy rights under the City Charter.

1

**JURISDICTION, VENUE, AND PARTIES**

5.      This Court has jurisdiction under Fla. Const. Art. V, § 5(b) and Fla. Stat. §§ 26.012(2)–(3).

6.      Venue is proper pursuant to Fla. Stat. § 47.011.

7.      Plaintiff Save the Garden is an unincorporated association formed to propose and advance the Clearwater citizens' initiative titled "Voter Approval Required for the Vacation of Public Right-of-Way in the Downtown."

8.      Plaintiffs Brooks Gibbs, Kelly Myer, Jessica Andujar, Tonatiuh "Tony" Tello, Jill Gibbs, William Mathis, and Janice Basler are Clearwater voters who together constitute the petitioners' committee for the Save the Garden initiative.

9.      Defendant City of Clearwater is a Florida municipality.

**FACTUAL ALLEGATIONS**

**A.  Clearwater Charter Provisions Governing Initiatives**

10.     Section 6.01 of the Clearwater City Charter grants the People the right to initiate ordinances, providing in relevant part that "[t]he voters of the city shall have power to propose ordinances to the council, and, if the council fails to adopt an ordinance so proposed without any change in substance, to adopt or reject it at a city election . . . ."

11.     Section 6.04 lays out how an initiative effort starts:

> Any five voters may commence initiative . . . proceedings by filing with the city clerk . . . an affidavit stating they will constitute the petitioners' committee and be responsible for circulating the petition and filing it in proper form, stating their names and addresses, specifying the address to which all notices to the committee are to be sent, and setting out in full the proposed initiative ordinance or citing the ordinance sought to be reconsidered.[1]

---

[1] Here and in other Charter quotations, references to "referendum" and "recall"—other forms of direct democracy the Charter provides for—are omitted.

2

12. After the petitioners' committee affidavit is filed, the Clerk then issues blank petition forms, and petition circulation begins. Charter § 6.04.

13. Section 6.05(a)–(c) lays out the requirements for initiative petitions themselves:

   a. Section 6.05(a) provides the number of required petitions: "[P]etitions must be signed by voters of the city equal in number to at least ten percent of the total number of voters registered to vote in the last regular city election."

   b. Section 6.05(b) lays out the petition format, including that "[p]etitions shall contain or have attached thereto throughout their circulation the full text of the ordinance proposed . . . ."

   c. Section 6.05(c) requires each petition paper to have attached to it, when filed, an affidavit executed by the circulator.

14. Section 6.06 lays out the City Clerk's duties once the petitions are submitted:

> Within 20 days after the initiative . . . petition is filed, the city clerk . . . shall complete a certificate as to its sufficiency, specifying, if it is insufficient, the particulars wherein it is insufficient and shall promptly send a copy of the certificate to the petitioner's committee by registered mail. Grounds for insufficiency are only those specified in section 6.05 hereof.

15. If the Clerk finds the petition insufficient, the sponsors have the right to supplement their petition with additional signatures within 10 days of receiving the certificate of insufficiency:

> A petition certified insufficient for lack of the required number of valid signatures may be amended once if the petitioners' committee files a notice of intention to amend with the city clerk . . . within two working days after receiving the copy of the city clerk's certificate and files a supplementary petition within ten days after receiving the copy of such certificate. The supplementary petition shall comply with the requirements of subsections (b) and (c) of section 6.05 hereof and within five days after it is filed the city clerk . . . shall complete a certificate as to the sufficiency of the petition as amended and promptly send a copy of such certificate to the petitioner's committee by registered mail as in the case of an original petition.

16.     If the amended petition is still deemed insufficient, the petitioner's committee has the right to request a review by the City Council. Charter § 6.06(b).

17.     If deemed sufficient, the initiative must be submitted to the voters at an election between 90 and 150 days from the date the petition is deemed sufficient. Charter § 6.08(b).

18.     In the last regular Clearwater election, there were 70,675 registered voters. An initiative petition therefore must be signed by at least 7,067 voters to be sufficient.

**B.  The Save the Garden Initiative**

19.     On June 13, 2025, Plaintiffs Brooks Gibbs, Jessica Andujar, Kelly Myer, Tonatiuh Tello, and Jill Gibbs began the Save the Garden initiative by submitting to the Clerk the affidavit required by Charter Section 6.04. The initiative and affidavit are attached as **Exhibit 1**.

20.     The Clerk then "issue[d] the appropriate petition blanks to the petitioners' committee" under Charter Section 6.04. The petition blank is attached as **Exhibit 2**.

21.     Over the next months, Save the Garden and its supporters collected thousands of signatures from Clearwater voters.

22.     Several months into petition collection, on October 7, 2025, the Clerk informed Plaintiff Myer that one of the five petitioners' committee members, Plaintiff Andujar, was not a registered Clearwater voter.

23.     The same day, Save the Garden added two additional Clearwater voters—Plaintiffs Mathis and Basler—to the petitioners' committee by filing affidavits with the Clerk.

24.     By the next day, Plaintiff Andujar had submitted a voter registration application, which was accepted. She was added to the voter rolls on October 8.

25.     On October 23, 2025, the City Clerk suggested to Plaintiff Myer by email that *only* the members of the petitioners' committee could collect and circulate petitions; *i.e.*, that other

supporters could not circulate petitions and collect signatures.

26.     The Clerk's suggestion were legally incorrect. The Charter does not require a petition circulator to be a member of the petitioners' committee.

27.     But relying on the Clerk's information, the committee members proceeded to circulate petitions by themselves (or ensured volunteers collected signatures only in the presence of a committee member) after that point.

28.     This severely limited the pace of petition collection. With just seven individuals circulating petitions, Save the Garden could only gather a limited number of signatures.

29.     Faced with an impossible task—collecting 7,067 signatures with just five circulators—Save the Garden eventually decided in early December 2026 to ignore the Clerk's instructions, and relied on additional supporters to circulate petitions.

30.     On March 17, 2026, Save the Garden submitted 8,051 signatures to the Clerk.

31.     On April 2, the Clerk issued a certificate finding the petition insufficient (**Exhibit 3**), which Save the Garden received by certified mail on April 7.

32.     Exercising their right to amend the petition under Charter Section 6.06(a), Save the Garden filed a supplementary petition with 701 additional petition signatures on April 17.

33.     On April 22, the Clerk issued an amended certificate still finding the petition insufficient (**Exhibit 4**).

34.     On May 21, the City Council approved the Clerk's finding that the petition had an insufficient number of signatures.

### C. The Clerk's Illegal Rejection of Valid Signatures

35.     The Clerk illegally rejected valid signatures.

### 1. *Inactive Voters*

36.     Florida law provides that a voter is designated as "inactive" after they fail to respond to an "address confirmation final notice" within 30 days, or if the notice is returned as undeliverable. Fla. Stat. § 98.065(4)(d).

37.     An inactive voter remains registered and eligible to vote. An inactive voter is only removed from the rolls if they do not update their registration information, request a mail ballot, or vote by the second general election after being placed on the inactive list. *Id.*

38.     Voters who are not on the "inactive" list are on the "active" list of voters.

39.     The Charter makes no distinction between active and inactive voters. Section 6.01 provides that "[t]he *voters* of the city shall of the power to propose ordinances" (emphasis added). Section 6.05(a) provides that petitions "must be signed by *voters* of the city equal in number to" the required threshold (emphasis added). Thus, any voter—active or inactive—can sign an initiative petition.

40.     Even though the Charter makes no distinction between active and inactive voters, the Clerk verified Save the Garden's petition using only the list of *active* voters.

41.     Clearwater has over 15,000 registered voters designated as inactive. The Clerk simply ignored all of them when verifying signatures, and rejected signatures of inactive voters.

### 2. *Signatures Collected Before October 7, 2025*

42.     The Clerk rejected 4,306 signatures because they "were collected prior to the Petitioner's Committee being comprised of five voters on October 7, 2025."

43.     Charter Section 6.04 provides that "[a]ny five voters may commence initiative . . . proceedings by filing . . . an affidavit stating they will constitute the petitioners' committee . . . ."

44.     Charter Section 6.06(a), laying out the Clerk's duties in reviewing a petition,

provides that the "[g]rounds for insufficiency are only those specified in section 6.05 hereof."

45.    The Clerk's rejection of the 4,306 signatures for violating a requirement *not* specified in Section 6.05 was therefore contrary to the Charter and unlawful.

46.    Additionally, the Charter's requirement that the petitioners' committee members be voters unduly burdens Plaintiffs' First Amendment-protected speech and associational rights, by limiting Plaintiffs' ability to band together with others to advance their initiative.

### 3.  *Petitions Circulated with Full Text of the Proposed Ordinance*

47.    Charter Section 6.059(b) requires petitions to "contain or have attached thereto throughout their circulation the full text of the ordinance proposed . . . ."

48.    Additionally, each petition circulator must swear on each petition page "that each signer had an opportunity before signing to read the full text of the ordinance proposed or sought to be reconsidered." Charter § 6.05(c).

49.    While the Charter requires the proposed ordinance full text to be contained in or attached to petitions "throughout their circulation," it does *not* require the full text to be attached to the petitions *after* circulation, when they are submitted to the Clerk.

50.    Nevertheless, the Clerk found the petition insufficient because "[t]he petitions submitted [] did not contain the full text of the proposed ordinance or have attached hereto the proposed ordinance."

51.    But—as each petition circulator swore to under oath—each petition form submitted *did* have attached to it the full text of the proposed ordinance *throughout its circulation*, as the Charter requires.

52.    The Clerk's rejection of the petition for not having attached to it the full text was therefore contrary to the Charter, unlawful, and erroneous.

**D. The Clerk's Rejection of Other Valid Signatures**

53.     The Clerk also rejected a number of valid signatures for unlawful reasons:

a.  The Clerk rejected a signature if the voter listed a City of Clearwater address that did not match the address on their voter record (i.e., a voter who had moved and had not yet updated their voting address).

b.  Similarly, the Clerk rejected a signature if the voter listed their street address on their voter record, but omitted an apartment number.

c.  The Clerk also rejected a signature if a voter wrote down their address, but had a minor mistake in their house number. For example, the Clerk rejected the signature of a 79-year-old voter whose address is "3062 Eastland Boulevard" but who wrote down "3206 Eastland Boulevard."

d.  The Clerk rejected the signatures of voters whose handwriting she misread, even if they were legible. For example, she misread the surname of one voter as "Rech" when their surname is "Reeb," and rejected the address of another because she misread a "7" in their address as a "2".

54.     Charter Section 6.05(b) requires only that the voter write their address on the petition, and an address mismatch, omitted apartment number, or minor mistake in a house number is not a reason for invalidating a signature.

55.     Similarly, the Clerk misreading a voter's handwriting is not a valid reason for invalidating a signature.

**E. The Clerk's Insufficient Certificate**

56.     Charter Section 6.06(a) requires the Clerk to "complete a certificate as to [the petition's] sufficiency, specifying, if it is insufficient, the particulars wherein it is insufficient . . . ."

8

57.    The Clerk's certificate, however, failed to specify the particulars:

a.    The certificate failed to specify that she rejected signatures because voters were designated as inactive, or how many she rejected for that reason;[2]

b.    The certificate failed to specify that she rejected signatures because of a mismatched address;

c.    The certificate failed to specify that she rejected signatures because of an omitted apartment number, minor mistake in a house number, or misread handwriting.

58.    Because the Clerk's certificate failed to specify the particulars wherein the petition was insufficient, the certificate was contrary to the Charter and unlawful.

## CLAIMS FOR RELIEF

### COUNT ONE

### Declaratory Judgment
### Violation of Clearwater Charter

59.    Plaintiffs reallege and reincorporate by reference all prior paragraphs.

60.    Pursuant to Section 86.011, Florida Statutes, this Court may render a declaratory judgment on whether the City has the power or right to (1) reject Plaintiffs' petition signatures for the reasons outlined above and (2) issue a certificate of insufficiency without detailing particulars, as outlined above.

61.    Likewise, the Court may render a declaratory judgment on whether Plaintiffs have

---

[2] Indeed, Plaintiffs only learned that the Clerk had rejected inactive-status voters' signatures after submitting a public records request for the list of voters the Clerk used to verify their petition. Because the filename of the list was "ActiveVoterData03252026.xlsx," Plaintiffs *deduced* that the list contained only active voters, and that therefore the Clerk had failed to count signatures of inactive voters.

the right to have their petition signatures verified, receive a certificate of insufficiency that details particulars, and submit a supplementary petition after receiving a lawful certificate of insufficiency.

62. There is an immediate, substantial, and actual justiciable controversy between Plaintiffs and the City.

63. Plaintiffs are uncertain as to whether the City has any legal right to engage in the conduct described above.

64. Plaintiffs allege the City's actions described above are unlawful, and they are interested in the invalidity of those actions.

65. The City claims that its actions are lawful.

66. The City will not voluntarily cease the actions Plaintiffs allege are unlawful.

67. Pursuant to Section 86.011, Florida Statutes, this Court should resolve all uncertainties regarding the City's right to engage in the conduct described above.

## COUNT TWO

### Undue Burden on Associational Rights
### Violation of the First Amendment

68. Plaintiffs reallege and reincorporate by reference paragraphs 1–58.

69. Plaintiffs have a First Amendment right to speak, associate, and act collectively with others to advance political ideas and circulate initiative petitions.

70. The government has no significant state or public interest in curtailing debate and discussion of a ballot measure, including by limiting an initiative petitioners' committee to just voters.

71. The Clearwater Charter's ban on non-voters being members of an initiative petitioners' committee unduly burdens free speech and association, operating as a denial of

10

Plaintiffs' First Amendment rights in violation of 42 U.S.C. § 1983.

72.     By limiting Plaintiffs' ability to band together with others—including non-voters—to advance citizen initiatives, the Charter unduly burdens Plaintiffs' First Amendment right to associate with others.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A. Declare as unlawful under the Clearwater City Charter and/or erroneous the City's (1) rejection of inactive voters' signatures, (2) rejection of signatures collected before the petitioners' committee was comprised of five voters, (3) rejection of petition forms on the basis that they did not have attached the full text of the proposed ordinance, (4) rejection of signatures with a mismatched address, missing apartment number, minor mistake in an address, or handwriting that the Clerk misread; and (5) failure to provide a certificate specifying the particulars wherein the petition was insufficient.

B. Declare as unconstitutional in violation of the First Amendment the Charter's prohibition on non-voters being members of a petitioners' committee and the City's rejection of signatures collected before the petitioners' committee was comprised of five voters;

C. Order the City to accept as valid (1) inactive voters' signatures, (2) the signatures of voters collected before the petitioners' committee was comprised of five voters, (3) petition forms submitted to the Clerk without the full text of the proposed ordinance when submitted, but which bear a completed circulator's affidavit, (4) signatures with a mismatched address, missing apartment number, minor mistake in an address, or handwriting that the Clerk misread;

D. Order the City to (1) issue a corrected certificate as to the petition's sufficiency, (2) permit

11

Plaintiffs to file a supplementary petition thereafter pursuant to Charter Section 6.06(a), and (3) if the petition is sufficient, submit the proposed ordinance to the voters by the deadline provided in Charter Section 6.08 as if the Clerk had issued a valid certificate initially;

E.  Award Plaintiffs' reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

F.  Award Plaintiffs' costs;

G.  Retain jurisdiction to grant supplemental relief as necessary and proper under Fla. Stat. § 86.061; and

H.  Grant any such other relief the Court deems appropriate.

Respectfully submitted May 22, 2026,

/s/ *Nicholas L.V. Warren*
Nicholas L.V. Warren (FBN 1019018)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
dtilley@aclufl.org

*Counsel for Plaintiffs*

12

# <u>Exhibit 1</u>

**Save the Garden Initiative and Affidavit
(June 13, 2025)**

## INITIATIVE FOR PROPOSED CITY ORDINANCE

City of Clearwater, Florida

Submitted to the City Clerk of Clearwater on June 13, 2025

## BALLOT TITLE:

**Voter Approval Required for the Vacation of Public Right-of-Way in the Downtown**

## BALLOT SUMMARY:

A vacation of public right-of-way, in whole or in part, located within the Downtown Clearwater Community Redevelopment Area (DTCRA) shall be valid and effective only if it is first approved by a majority of the electors of the City of Clearwater voting in a municipal or special referendum. This change ensures that residents have the final say over whether public rights-of-way in Clearwater's downtown can be removed from public use.

## TEXT OF PROPOSED ORDINANCE:

AN ORDINANCE OF THE CITY OF CLEARWATER, FLORIDA, REQUIRING DIRECT VOTER APPROVAL FOR THE VACATION OF PUBLIC RIGHT-OF-WAY IN THE DOWNTOWN CLEARWATER COMMUNITY REDEVELOPMENT AREA (DTCRA); PROVIDING FOR DEFINITIONS, EXCEPTIONS, REFERENDUM REQUIREMENT, SEVERABILITY, AND AN EFFECTIVE DATE.

WHEREAS, the public right-of-way in the Downtown Clearwater Community Redevelopment Area (DTCRA) serves as a vital asset for transportation, accessibility, economic development, and public use; and

WHEREAS, the City of Clearwater seeks to ensure that decisions affecting the permanent relinquishment of public rights-of-way in this key area are made directly by the citizens;

NOW, THEREFORE, BE IT ORDAINED BY THE PEOPLE OF THE CITY OF CLEARWATER, FLORIDA:

## Section 1 – Definitions

1) Right-of-way means any land or interest in land, whether improved or unimproved, dedicated or otherwise set aside for public use, including but not limited to streets, sidewalks, alleys, easements, and public pathways.

2) Vacation means the act of legally abandoning, discontinuing, or extinguishing the public's interest in a right-of-way.

3) "Downtown Clearwater Community Redevelopment Area (DTCRA)" means the area defined in the official Clearwater Downtown Community Redevelopment Plan adopted by the City and any amendments thereto. The boundaries include Court-Chestnut Streets to the South, Drew-Jones Streets to the North, Clearwater Harbor to the West and Highland Avenue to the East.

## Section 2 – Referendum Requirement

No vacation of public right-of-way, in whole or in part, located within the Downtown Clearwater Community Redevelopment Area (DTCRA) shall be valid or effective unless first approved by a majority of the electors of the City of Clearwater voting in a municipal or special referendum.

For purposes of this ordinance, any agreement, lease, license, or public-private partnership that results in the long-term exclusive use, management, or effective control of a public right-of-way by a private or religious entity shall be treated as a vacation and shall also require voter approval under this section.

For the purposes of this ordinance, "effective control" shall be defined as any agreement, lease, license, or arrangement that grants a private or religious entity decision-making authority over the access, use, or operation of a public right-of-way for a period exceeding twelve months, or that otherwise restricts general public access in practice.

## Section 3 – Exceptions to Referendum Requirement

This ordinance shall not apply to any proposed vacation of public right-of-way within the Downtown Clearwater Community Redevelopment Area (DTCRA) if all the following conditions are met:

1) The vacation is exclusively required for a public purpose, including but not limited to:
    a) Flood mitigation or stormwater management;
    b) Installation or repair of utilities (e.g., water, sewer, electric, broadband);
    c) Public transit infrastructure or emergency access routes;
    d) City-owned public facilities such as parks, government buildings, or community centers;
2) The vacation does not result in ownership transfer or exclusive use by any private or religious entity;

3) The vacation is approved by a supermajority vote of at least four-fifths (4/5) of the City Council;

4) The City Council shall publicly certify the vacation by adopting a formal resolution during a publicly noticed meeting, which includes the following findings based on documented evidence and public record:

    a) That it serves a compelling public interest;

    b) That it maintains or improves public access; and

    c) That it is not associated with or intended to benefit a private development entity, as demonstrated through documented findings, public disclosures, and review of relevant property ownership records, financial interests, and development plans presented at the meeting.

## Section 4 – Severability

If any portion of this ordinance is declared unconstitutional or invalid by a court of competent jurisdiction, the remaining portions shall remain in full force and effect.

## Section 5 – Effective Date

This ordinance shall take effect immediately upon approval by voters and shall apply to all proposed right-of-way vacations thereafter, regardless of any prior action or consideration by any governmental body.

## Section 6 – Continuity of Boundaries

If the Downtown Clearwater Community Redevelopment Area (DTCRA) is modified, renamed, or dissolved after the adoption of this ordinance, the provisions herein shall remain applicable to the geographic boundaries of the DTCRA as defined at the time this ordinance was approved by the voters. This ensures the continued effect of this ordinance regardless of administrative or legislative changes to redevelopment district boundaries.

## PETITIONERS' COMMITTEE

The undersigned affiants are qualified voters in the City of Clearwater and shall constitute the petitioners' committee, responsible for circulating the petition and filing it in proper form. Each affiant states their name and address below, and all notices to the committee shall be sent to the address of the first-named affiant.

**Affiant's Name:** Brooks Gibbs
**Address:** 1204 Alameda Ave., Clearwater, FL 33759
(Address where all notices to the committee shall be sent)
**Signature:** _Brooks Gibbs_
**Date:** June 13, 2025

**Affiant's Name:** Jessica Andujar
**Address:** 549 Jasmine Way, Clearwater, FL 33756
**Signature:** _Jessica Marie Andujar_
**Date:** June 13, 2025

**Affiant's Name:** Kelly Myer
**Address:** 3311 San Bernadino St., Clearwater, FL 33759
**Signature:** _Kelly Myer_
**Date:** June 13, 2025

**Affiant's Name:** Tonatiuh M. Tello
**Address:** 549 Jasmine Way, Clearwater, FL 33756
**Signature:** _Tonatiuh Manuel Tello_
**Date:** June 13, 2025

**Affiant's Name:** Jill Gibbs
**Address:** 1204 Alameda Ave., Clearwater, FL 33759
**Signature:** _Jill nicole Gibbs_
**Date:** June 13, 2025

## NOTARY PUBLIC ACKNOWLEDGMENT

**STATE OF ~~FLORIDA~~ Virginia**
**COUNTY OF ~~PINELLAS~~ Fairfax**

Sworn to (or affirmed) and subscribed before me this 13th day of ___June___, 2025, by the above-named affiants, who are personally known to me or who have produced ___driver's license___ as identification.

**Notary Public – State of ~~Florida~~ Virginia**
(Signature) _____
(Name of Notary, printed) _____
My Commission Expires: ___02/28/2027___
Commission Number: ___8077655___



Md Abu Taleb
REGISTRATION NUMBER
8077655
COMMISSION EXPIRES
February 28, 2027

Notarized remotely online using communication technology via Proof.

4 of 4

# <u>Exhibit 2</u>

## Save the Garden Petition Blank

INITIATIVE PETITION BY ELECTORS OF THE
CITY OF CLEARWATER

To the City Council of Clearwater:

We, the undersigned, qualified voters of the City of Clearwater, pursuant to and subject to the limitations contained in Section 6.01, City Charter, hereby exercise our power to propose, by petition, the following ordinance to the council, and, if the council fails to adopt this ordinance as proposed without any change in substance, to adopt or reject the ordinance at a city election.  A copy of the proposed ordinance is attached.

| SIGNATURE | FULL NAME (Block Letters) | RESIDENCE ADDRESS (include apt. #) | DATE | PRECINCT (if known) |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

STATE OF FLORIDA
COUNTY OF PINELLAS                                                          AFFIDAVIT OF PETITION CIRCULATOR

Before me personally appeared _____ who being by me first sworn deposes and says:  1) I personally circulated the above petition; 2) The number of signatures on the above petition is _____ ; 3) All of the signatures were made in my presence; 4) All of the signatures are genuine, to the best of my belief; 5) Each person signing this petition had an opportunity before signing to read the full text of the proposed initiative ordinance.

_____
Petition Circulator

Subscribed and sworn to (or affirmed) before me on _____, 20___
                                                                *(date)*
by _____.   He/she is personally known to me or has
   *(name of affiant, deponent or other signer)*

presented _____ as identification.
             *(type of identification)*

_____
(NOTARY'S SIGNATURE AND SEAL)

12/06/2024

# <u>Exhibit 3</u>

**Clerk's Initial Certificate**
**(April 2, 2026)**



# CITY OF CLEARWATER

POST OFFICE BOX 4748, CLEARWATER, FLORIDA 33758-4748
600 CLEVELAND STREET, SUITE 600, CLEARWATER, FL 33755
TELEPHONE (727) 562-4090 FAX (727) 562-4086

CITY CLERK

## CERTIFICATE OF CITY CLERK

1. Article VI of the Clearwater Charter sets forth the process for voters of the City to propose ordinances to City Council through initiate or referendum petitions.

2. Pursuant to Section 6.04, Article VI of the Charter, any five voters may commence initiative proceedings by filing with the City Clerk an affidavit and the proposed initiative ordinance.

3. Section 6.05, Article VI of the Charter requires that the initiative petition must be signed by voters of the City equal in number to at least 10 % of the total number of voters registered to vote in the last regular city election; that all papers of a petition must be in uniform size and style; and that each paper of a petition shall have attached to it an affidavit of the circulator.

4. In the last regular City election, there were 70,675 registered voters. For an initiative petition to be sufficient, the petition would need to be signed by at least 7,067 voters.

5. On June 13, 2025, a Petitioner's Committee, comprised of Brooks Gibbs, Jessica Andujar, Kelly Myer, Tonatiuh Tello, and Jill Gibbs, submitted an Initiative Petition pursuant to Article VI of the Clearwater Charter.

6. The Initiative Petition contained a proposed ordinance for adoption into the Clearwater Code of Ordinances. The proposed ordinance would require voter approval for the vacation of public right-of-way located within the Downtown Clearwater Community Redevelopment Area.

7. In addition, the Initiative Petition contained an affidavit from the Petitioner's Committee which stated that Brooks Gibbs, Jessica Andujar, Kelly Myer, Tonatiuh Tello, and Jill Gibbs "are qualified voters in the City of Clearwater and shall constitute the petitioner's committee, responsible for circulating the petition and filing it in proper form...."

8. In October 2025, the City became aware that the Petitioner's Committee was not comprised of five voters. I contacted the Petitioner's Committee and informed them that Jessica Andujar was not a voter of the City.

Bruce Rector, Mayor

Ryan Cotton, Councilmember
Mike Mannino, Councilmember



David Allbritton, Councilmember
Lina Teixeira, Councilmember

"Equal Employment and Affirmative Action Employer"

9. On October 7, 2025, the Petitioner's Committee added William Allen Mathis and Janice Basler as new Committee members.

10. The first day that the Petitioner' Committee included five voters was October 7, 2025.

11. On March 17, 2026, Petitioner's Committee submitted petitions signed by approximately 8,051 individuals.

## FINDING OF INSUFFICIENCY

12. Upon examination of the Initiative Petition, I determined that the signature petitions contain 2,702 valid signatures and 5,349 invalid signatures.

13. 4,306 signatures were collected prior to the Petitioner's Committee being comprised of five voters on October 7, 2025. Section 6.04 of the Charter requires five voters to commence initiative proceedings. Since the Petitioner's Committee was not comprised of five voters prior to October 7, 2025, all signatures collected prior to October 7, 2025 are invalid.

14. 3,745 signatures were collected on or after October 7, 2025. 1,043 signatures were signed by individuals who were not registered voters of the City and are invalid. 2,702 signatures were signed by individuals who are voters of the City and are valid.

15. Therefore, the Initiative Petition is deemed insufficient due to the lack of required number of valid signatures.

16. Section 6.05(b) requires the petition contain or have attached hereto throughout the circulation the full text of the ordinance proposed. The petitions submitted on March 17, 2026 did not contain the full text of the proposed ordinance or have attached hereto the proposed ordinance.

17. Pursuant to Section 6.06(a), the Petitioner's Committee may amend its Petition once for lack of the required number of signatures by filing a notice of intent to amend with the City Clerk within two working days after receiving this Certificate and by filing a supplementary petition within ten days after receiving this Certificate. If the Petitioner's Committee does not elect to amend, it may file a request for City Council to review this Certificate within two working days after receiving this Certificate.

Signed this ____2nd____ day of____April____, 2026.

Rosemarie Call
City Clerk

# <u>Exhibit 4</u>

**Clerk's Amended Certificate
(April 22, 2026)**



# CITY OF CLEARWATER

POST OFFICE BOX 4748, CLEARWATER, FLORIDA 33758-4748
600 CLEVELAND STREET, SUITE 600, CLEARWATER, FL 33755
TELEPHONE (727) 562-4090  FAX (727) 562-4086

CITY CLERK

**CERTIFICATE OF CITY CLERK**
**PETITIONER'S AMENDMENT**

1. Article VI of the Clearwater Charter sets forth the process for voters of the City to propose ordinances to City Council through initiative or referendum petitions.

2. Pursuant to Section 6.04, Article VI of the Charter, any five voters may commence initiative proceedings by filing with the City Clerk an affidavit and the proposed initiative ordinance.

3. Section 6.05, Article VI of the Charter requires that the initiative petition must be signed by voters of the City equal in number to at least 10 % of the total number of voters registered to vote in the last regular city election; that all papers of a petition must be in uniform size and style; and that each paper of a petition shall have attached to it an affidavit of the circulator.

4. In the last regular City election, there were 70,675 registered voters. For an initiative petition to be sufficient, the petition would need to be signed by at least 7,067 voters.

5. On June 13, 2025, a Petitioner's Committee, comprised of Brooks Gibbs, Jessica Andujar, Kelly Myer, Tonatiuh Tello, and Jill Gibbs, submitted an Initiative Petition pursuant to Article VI of the Clearwater Charter.

6. The Initiative Petition contained a proposed ordinance for adoption into the Clearwater Code of Ordinances. The proposed ordinance would require voter approval for the vacation of public right-of-way located within the Downtown Clearwater Community Redevelopment Area.

7. In addition, the Initiative Petition contained an affidavit from the Petitioner's Committee which stated that Brooks Gibbs, Jessica Andujar, Kelly Myer, Tonatiuh Tello, and Jill Gibbs "are qualified voters in the City of Clearwater and shall constitute the petitioner's committee, responsible for circulating the petition and filing it in proper form...."

8. In October 2025, the City became aware that the Petitioner's Committee was not comprised of five voters. I contacted the Petitioner's Committee and informed them that Jessica Andujar was not a voter of the City.

Bruce Rector, Mayor

Ryan Cotton, Councilmember
Mike Mannino, Councilmember



David Allbritton, Councilmember
Lina Teixeira, Councilmember

"Equal Employment and Affirmative Action Employer"

9. On October 7, 2025, the Petitioner's Committee added William Allen Mathis and Janice Basler as new Committee members.

10. The first day that the Petitioner's Committee included five voters was October 7, 2025.

11. On March 17, 2026, Petitioner's Committee submitted petitions signed by approximately 8,051 individuals.

12. Pursuant to Section 6.06, I reviewed the Initiative Petition and determined that the signature petitions contained 2,702 valid signatures and 5,349 invalid signatures.

13. 4,306 signatures were collected prior to the Petitioner's Committee being comprised of five voters on October 7, 2025. Section 6.04 of the Charter requires five voters to commence initiative proceedings. Since the Petitioner's Committee was not comprised of five voters prior to October 7, 2025, all signatures collected prior to October 7, 2025 are invalid.

14. 3,745 signatures were collected on or after October 7, 2025. 1,043 signatures were signed by individuals who were not registered voters of the City and are invalid. 2,702 signatures were signed by individuals who are voters of the City and are valid.

15. Section 6.05(b) requires the petition contain or have attached hereto throughout the circulation the full text of the ordinance proposed. The petitions submitted on March 17, 2026 did not contain the full text of the proposed ordinance or have attached hereto the proposed ordinance.

16. The Initiative Petition was deemed insufficient due to the lack of required number of valid signatures as required by Section 6.05(a) and failing to comply with Section 6.05(b). Pursuant to Section 6.06, I completed the Certificate of City Clerk on April 2, 2026. The Certificate was sent by registered mail to the Petitioner's Committee and was received by the Committee on April 7, 2026.

17. On April 6, 2026, the Petitioner's Committee submitted a notice of intention to amend pursuant to Section 6.06(a). On April 17, 2026, the Petitioner's Committee submitted petitions signed by approximately 701 individuals.

## FINDING OF INSUFFICIENCY

18. Upon examination of the Amended Initiative Petition, I determined that the signature petitions contain 506 valid signatures and 195 invalid signatures.

19. 701 signatures were collected for the Amended Initiative Petition. 195 signatures were signed by individuals who were not registered voters of the City and are invalid. 506 signatures were signed by individuals who are voters of the City and are valid.

20. On April 10, 2026, the Pinellas County Supervisor of Elections provided the City with an additional voter roll containing 309 registered voters. Based upon this additional voter roll, I have determined that an additional 3 signatures were signed by individuals who are voters of the City and are valid.

21. 4,306 signatures were collected prior to the Petitioner's Committee being comprised of five voters on October 7, 2025. Section 6.04 of the Charter requires five voters to commence initiative proceedings. Since the Petitioner's Committee was not comprised of five voters prior to October 7, 2025, all signatures collected prior to October 7, 2025 are invalid.

22. A summary of the Initiative Petition and Amendment is as follows:

Total signatures submitted: 8752

Total valid signatures:      3211

Total invalid signatures:    5541

Total invalid signatures due to address not matching voter roll:  35

Total number of instances where voter signed more than once: 40

23. The Petitioner's Committee has requested that 4,306 signatures be reconsidered and not excluded without review. I have reviewed the 4,306 signatures collected prior to October 7, 2025. 1,231 signatures were signed by individuals who were not registered voters of the City and would be invalid. 2,956 signatures were signed by individuals who are voters of the City and would be valid if the signatures collected prior to October 7, 2025 are considered. Therefore, even if signatures collected prior to October 7, 2025 are considered, the Initiative Petition and Amendment are still insufficient due to the lack of required number of valid signatures. A summary is as follows:

Total signatures submitted: 8,752

Total valid signatures if signatures collected prior to October 7, 2025 are counted:      6,167

Total invalid signatures if signatures collected prior to October 7, 2025 are counted:      2,391

Total invalid signatures due to address not matching voter roll:  90

Total number of instances where voter signed more than once: 104

24. Section 6.05(b) states that "All papers of a petition shall be uniform in size and style and shall be assembled as one instrument for filing. Each signature shall be executed

in ink or indelible pencil and shall be followed by the address of the person signing. Petitions shall contain or have attached thereto throughout their circulation the full text of the ordinance proposed or sought to be reconsidered." The petitions forms utilized by the Petitioner's Committee state in the first full paragraph that "A copy of the proposed ordinance is attached." However, the petitions submitted on March 17, 2026 did not contain the full text of the proposed ordinance or have attached hereto the proposed ordinance. The requirement that the proposed ordinance to be included in the petition or attached hereto is contained in the petition forms and Charter.

25. The Initiative Petition and Amendment are deemed insufficient due to the lack of required number of valid signatures as required by Section 6.05(a) and failing to comply with Section 6.05(b).

26. Pursuant to Section 6.06(b), the Petitioner's Committee may file a request for City Council to review this Certificate within two working days after receiving this Certificate.

Signed this 22nd day of April, 2026.

Rosemarie Call
City Clerk