**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

SAVE THE GARDEN, BROOKS
GIBBS, KELLY MYER, JESSICA
ANDUJAR, TONATIUH TELLO, JILL
GIBBS, WILLIAM MATHIS, and
JANICE BASLER,

      *Plaintiffs*,

v.

CITY OF CLEARWATER,

      *Defendant*.

_____/

Case No. 8:26-cv-1662-KKM-AEP

**Injunctive and Declaratory
Relief Requested**

**<u>FIRST AMENDED COMPLAINT</u>**

1.     The Clearwater City Charter grants the People the right of initiative: to propose and vote on ordinances the City Council refuses to adopt. The Charter lays out initiative sponsors' obligations in collecting and submitting petitions, as well as the City Clerk's duties to process submitted petitions.

2.     Plaintiffs attempted to exercise their right of initiative, filing their initiative with the City Clerk, circulating petitions, and submitting over 8,000 signatures for verification so that their proposal could go before the voters at the August 2026 primary election.

3.     But the City Clerk failed to fulfill her duties. She rejected valid petitions, failed to give Plaintiffs the required notice as to why she rejected petitions, and gave Plaintiffs incorrect information about the rules they had to follow, severely hindering Plaintiffs' petitioning efforts.

4.     As a result of the Clerk's illegal actions, on April 22, 2026, she certified that Plaintiffs' initiative effort had *not* attained the required number of signatures. A month later, the City Council ratified her decision. Plaintiffs bring suit to rectify the City's failures and vindicate their direct-democracy rights under the City Charter and First Amendment.

## JURISDICTION, VENUE, AND PARTIES

5.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. §§ 1983 and 1988, because this action arises under the Constitution and laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' state law claim under 28 U.S.C. § 1367.

6.     Venue is proper pursuant to 28 U.S.C. § 1441.

7.     Plaintiff Save the Garden is an unincorporated association formed to propose and advance the Clearwater citizens' initiative titled "Voter Approval Required for the Vacation of Public Right-of-Way in the Downtown."

8.     Plaintiffs Brooks Gibbs, Kelly Myer, Jessica Andujar, Tonatiuh "Tony" Tello, Jill Gibbs, William Mathis, and Janice Basler are Clearwater voters who together constitute the petitioners' committee for the Save the Garden initiative.

9.     Defendant City of Clearwater is a Florida municipality.

## FACTUAL ALLEGATIONS

### A. Clearwater Charter Provisions Governing Initiatives

10.     Section 6.01 of the Clearwater City Charter grants the People the right to initiate ordinances, providing in relevant part that "[t]he voters of the city shall have

2

power to propose ordinances to the council, and, if the council fails to adopt an ordinance so proposed without any change in substance, to adopt or reject it at a city election . . . ."

11.    Section 6.04 lays out how an initiative effort starts:

> Any five voters may commence initiative . . . proceedings by filing with the city clerk . . . an affidavit stating they will constitute the petitioners' committee and be responsible for circulating the petition and filing it in proper form, stating their names and addresses, specifying the address to which all notices to the committee are to be sent, and setting out in full the proposed initiative ordinance or citing the ordinance sought to be reconsidered.[1]

12.    After the petitioners' committee affidavit is filed, the Clerk then issues blank petition forms, and petition circulation begins. Charter § 6.04.

13.    Section 6.05(a)–(c) lays out the requirements for initiative petitions themselves:

a.    Section 6.05(a) provides the number of required petitions: "[P]etitions must be signed by voters of the city equal in number to at least ten percent of the total number of voters registered to vote in the last regular city election."

b.    Section 6.05(b) lays out the petition format, including that "[p]etitions shall contain or have attached thereto throughout their circulation the full text of the ordinance proposed . . . ."

c.    Section 6.05(c) requires each petition paper to have attached to it,

---

[1] Here and in other Charter quotations, references to "referendum" and "recall"—other forms of direct democracy the Charter provides for—are omitted.

when filed, an affidavit executed by the circulator.

14.     Section 6.06 lays out the City Clerk's duties once the petitions are submitted:

> Within 20 days after the initiative . . . petition is filed, the city clerk . . . shall complete a certificate as to its sufficiency, specifying, if it is insufficient, the particulars wherein it is insufficient and shall promptly send a copy of the certificate to the petitioner's committee by registered mail. Grounds for insufficiency are only those specified in section 6.05 hereof.

15.     If the Clerk finds the petition insufficient, the sponsors have the right to supplement their petition with additional signatures within 10 days of receiving the certificate of insufficiency:

> A petition certified insufficient for lack of the required number of valid signatures may be amended once if the petitioners' committee files a notice of intention to amend with the city clerk . . . within two working days after receiving the copy of the city clerk's certificate and files a supplementary petition within ten days after receiving the copy of such certificate. The supplementary petition shall comply with the requirements of subsections (b) and (c) of section 6.05 hereof and within five days after it is filed the city clerk . . . shall complete a certificate as to the sufficiency of the petition as amended and promptly send a copy of such certificate to the petitioner's committee by registered mail as in the case of an original petition.

16.     If the amended petition is still deemed insufficient, the petitioner's committee has the right to request a review by the City Council. Charter § 6.06(b).

17.     If deemed sufficient, the initiative must be submitted to the voters at an election between 90 and 150 days from the date the petition is deemed sufficient. Charter § 6.08(b).

18.     In the last regular Clearwater election, there were 70,675 registered

voters. An initiative petition therefore must be signed by at least 7,067 voters to be sufficient.

**B.  The Save the Garden Initiative**

19.    On June 13, 2025, Plaintiffs Brooks Gibbs, Jessica Andujar, Kelly Myer, Tonatiuh Tello, and Jill Gibbs began the Save the Garden initiative by submitting to the Clerk the affidavit required by Charter Section 6.04. The initiative and affidavit are attached as **Exhibit 1**.

20.    The Clerk then "issue[d] the appropriate petition blanks to the petitioners' committee" under Charter Section 6.04. The petition blank is attached as **Exhibit 2**.

21.    Over the next months, Save the Garden and its supporters collected thousands of signatures from Clearwater voters.

22.    Several months into petition collection, on October 7, 2025, the Clerk informed Plaintiff Myer that one of the five petitioners' committee members, Plaintiff Andujar, was not a registered Clearwater voter.

23.    The same day, Save the Garden added two additional Clearwater voters—Plaintiffs Mathis and Basler—to the petitioners' committee by filing affidavits with the Clerk.

24.    By the next day, Plaintiff Andujar had submitted a voter registration application, which was accepted. She was added to the voter rolls on October 8.

25.    Starting before the petition was filed, Plaintiffs sought clarity from the City Clerk on whether volunteers who were *not* members of the petitioners' committee could circulate petitions. The Clerk told Plaintiffs in June 2025 that the City's Legal

Department was researching the matter, and she would advise of their findings.

26.    Having not received an update, on October 22, 2025, Plaintiff Gibbs again asked if the petitioners' committee could delegate to volunteer circulators. After saying she checked with the Legal Department, the Clerk responded to the question: "the city charter is clear – the petitioner's committee is responsible for circulating the petitions."

27.    Mr. Gibbs sought clarity: "When you note that the petitioner's committee is 'responsible' for circulating the petitions, can you clarify your definition of 'circulating'?" But this time, the Clerk said she couldn't provide legal advice.

28.    The Clerk's suggestion that only petitioners' committee members could circulate petitions—*i.e.*, that other supporters could not circulate petitions and collect signatures—severely limited the pace of petitioning. Relying on the Clerk and trying to proceed as cautiously as possible, the committee members circulated petitions by themselves (or ensured volunteers collected signatures only in a committee member's presence).

29.    With just seven individuals circulating petitions, Save the Garden could only gather a limited number of signatures. Faced with an impossible task—collecting 7,067 signatures with just seven circulators—Save the Garden eventually decided in early December 2025 to rely on additional supporters to circulate petitions.

30.    In the end, despite City's (at best) unwillingness to clarify how it would apply the rule, or (at worst) incorrectly suggesting that only committee members could circulate petitions, the Clerk did not reject any signatures on the grounds that they

were collected by non-committee members.

31.     On March 17, 2026, Save the Garden submitted 8,051 signatures to the Clerk.

32.     On April 2, the Clerk issued a certificate finding the petition insufficient (**Exhibit 3**), which Save the Garden received by certified mail on April 7.

33.     Exercising their right to amend the petition under Charter Section 6.06(a), Save the Garden filed a supplementary petition with 701 additional petition signatures on April 17.

34.     On April 22, the Clerk issued an amended certificate still finding the petition insufficient (**Exhibit 4**).

35.     On May 21, the City Council approved the Clerk's finding that the petition had an insufficient number of signatures.

### C. The Clerk's Illegal Rejection of Valid Signatures

36.     The Clerk illegally rejected valid signatures.

#### 1. *Inactive Voters*

37.     Florida law provides that a voter is designated as "inactive" after they fail to respond to an "address confirmation final notice" within 30 days, or if the notice is returned as undeliverable. Fla. Stat. § 98.065(4)(d).

38.     An inactive voter remains registered and eligible to vote. An inactive voter is only removed from the rolls if they do not update their registration information, request a mail ballot, or vote by the second general election after being placed on the inactive list. *Id.*

7

39.    Voters who are not on the "inactive" list are on the "active" list of voters.

40.    The Charter makes no distinction between active and inactive voters. Section 6.01 provides that "[t]he *voters* of the city shall of the power to propose ordinances" (emphasis added). Section 6.05(a) provides that petitions "must be signed by *voters* of the city equal in number to" the required threshold (emphasis added). Thus, any voter—active or inactive—can sign an initiative petition.

41.    Even though the Charter makes no distinction between active and inactive voters, the Clerk verified Save the Garden's petition using only the list of *active* voters.

42.    Clearwater has over 15,000 registered voters designated as inactive. The Clerk simply ignored all of them when verifying signatures, and rejected signatures of inactive voters.

### 2. Signatures Collected Before October 7, 2025

43.    The Clerk rejected 4,306 signatures because they "were collected prior to the Petitioner's Committee being comprised of five voters on October 7, 2025."

44.    Charter Section 6.04 provides that "[a]ny five voters may commence initiative . . . proceedings by filing . . . an affidavit stating they will constitute the petitioners' committee . . . ."

45.    Charter Section 6.06(a), laying out the Clerk's duties in reviewing a petition, provides that the "[g]rounds for insufficiency are only those specified in section 6.05 hereof."

46.    The Clerk's rejection of the 4,306 signatures for violating a requirement

8

*not* specified in Section 6.05 was therefore contrary to the Charter and unlawful.

47. Additionally, the Charter's requirement that the petitioners' committee members be voters unduly burdens Plaintiffs' First Amendment-protected speech and associational rights, by limiting Plaintiffs' ability to band together with others to advance their initiative.

### 3. *Petitions Circulated with Full Text of the Proposed Ordinance*

48. Charter Section 6.05(b) requires petitions to "contain or have attached thereto throughout their circulation the full text of the ordinance proposed . . . ."

49. Additionally, each petition circulator must swear on each petition page "that each signer had an opportunity before signing to read the full text of the ordinance proposed or sought to be reconsidered." Charter § 6.05(c).

50. While the Charter requires the proposed ordinance full text to be contained in or attached to petitions "throughout their circulation," it does *not* require the full text to be attached to the petitions *after* circulation, when they are submitted to the Clerk.

51. Nevertheless, the Clerk found the petition insufficient because "[t]he petitions submitted [] did not contain the full text of the proposed ordinance or have attached hereto the proposed ordinance."

52. But—as each petition circulator swore to under oath—each petition form submitted *did* have attached to it the full text of the proposed ordinance *throughout its circulation*, as the Charter requires.

53. The Clerk's rejection of the petition for not having attached to it the full

text was therefore contrary to the Charter, unlawful, and erroneous.

**D. The Clerk's Rejection of Other Valid Signatures**

54.   The Clerk also rejected a number of valid signatures for unlawful reasons:

   a.   The Clerk rejected a signature if the voter listed a City of Clearwater address that did not match the address on their voter record (i.e., a voter who had moved and had not yet updated their voting address).

   b.   Similarly, the Clerk rejected a signature if the voter listed their street address on their voter record, but omitted an apartment number.

   c.   The Clerk also rejected a signature if a voter wrote down their address, but had a minor mistake in their house number. For example, a 93-year-old voter at "1920 Carlos Ave" wrote "192" and was rejected as not registered.

   d.   The Clerk also rejected voters whose names or addresses City staff entered incorrectly when they searched the voter roll, or whose nonstandard names (like Spanish double last names) were rejected. For example, the address of one voter was rejected because a "7" was searched as a "2"; Paul Panilio was entered with "Paul" as his last name and rejected; Renee Dubuque was entered as "Dubugue" and rejected; William Brown was entered as "M. Brown" and rejected; Beatriz Dezengotita was searched as De Zengotita, and rejected; Kathleen Le Blanc was searched as Leblanc, and rejected; and Jessica Perez Marcelino (double last name) who signed as Jessica Perez was

rejected.

e. Additionally, the Clerk rejected valid signatures for other erroneous reasons, for example rejecting voters' signatures because they registered to vote after signing, when in fact they had been registered for years.

55. Charter Section 6.05(b) requires only that the voter write their address on the petition, and an address mismatch, omitted apartment number, or minor mistake in a house number is not a reason for invalidating a signature.

56. Similarly, the Clerk misreading a voter's handwriting is not a valid reason for invalidating a signature.

57. And a signature cannot be rejected because the Clerk searched the voter's name incorrectly—or for no apparent reason at all.

**E. The Clerk's Insufficient Certificate**

58. Charter Section 6.06(a) requires the Clerk to "complete a certificate as to [the petition's] sufficiency, specifying, if it is insufficient, the particulars wherein it is insufficient . . . ."

59. The Clerk's certificate, however, failed to specify the particulars:

a. The certificate failed to specify that she rejected signatures because voters were designated as inactive, or how many she rejected for that

reason;[2]

b.  The certificate failed to specify that she rejected signatures because of a mismatched address;

c.  The certificate failed to specify that she rejected signatures because of an omitted apartment number, minor mistake in a house number, misread handwriting, or other reasons.

60.  Because the Clerk's certificate failed to specify the particulars wherein the petition was insufficient, the certificate was contrary to the Charter and unlawful.

## CLAIMS FOR RELIEF

### COUNT ONE

### Violation of the Clearwater City Charter

61.  Plaintiffs reallege and reincorporate by reference ¶¶ 1--46 and 48--60.

62.  As described above, the Clearwater City Charter grants voters the right to form an initiative petition, collect petitions, and have their valid petitions counted.

63.  The Charter also imposes procedural safeguards to ensure petition organizers have adequate notice of why petitions are rejected.

64.  The City's rejections of petitions for the reasons outlined in ¶¶ 36–57 violated the Charter.

65.  The City's failure to provide a certificate of insufficiency that detailed the

---

[2] Indeed, Plaintiffs only learned that the Clerk had rejected inactive-status voters' signatures after submitting a public records request for the list of voters the Clerk used to verify their petition. Because the filename of the list was "ActiveVoterData03252026.xlsx," Plaintiffs *deduced* that the list contained only active voters, and that therefore the Clerk had failed to count signatures of inactive voters.

particulars wherein the petition was insufficient violated the Charter as well.

## COUNT TWO

### Undue Burden on Free Speech and Association
### Violation of the First Amendment

66.     Plaintiffs reallege and reincorporate by reference ¶¶ 1–35, 43--44, and 47.

67.     Plaintiffs have a First Amendment right to speak, associate, and act collectively with others to advance political ideas and circulate initiative petitions.

68.     The government has no significant state or public interest in curtailing debate and discussion of a ballot measure, including by limiting an initiative petitioners' committee to just voters.

69.     The Clearwater Charter's ban on non-voters being members of an initiative petitioners' committee unduly burdens free speech and association, operating as a denial of Plaintiffs' First Amendment rights in violation of 42 U.S.C. § 1983.

70.     By limiting Plaintiffs' ability to band together with others—including non-voters—to advance citizen initiatives, the Charter unduly burdens Plaintiffs' First Amendment right to associate with others.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A. Declare as unlawful under the Clearwater City Charter and/or erroneous the City's (1) rejection of inactive voters' signatures, (2) rejection of signatures collected before the petitioners' committee was comprised of five voters, (3)

13

rejection of petition forms on the basis that they did not have attached the full text of the proposed ordinance, (4) rejection of signatures with a mismatched address, missing apartment number, minor mistake in an address, or mistakes in searching for a voter; and (5) failure to provide a certificate specifying the particulars wherein the petition was insufficient.

B.  Declare as unconstitutional in violation of the First Amendment the Charter's prohibition on non-voters being members of a petitioners' committee and the City's rejection of signatures collected before the petitioners' committee was comprised of five voters;

C.  Order the City to accept as valid (1) inactive voters' signatures, (2) the signatures of voters collected before the petitioners' committee was comprised of five voters, (3) petition forms submitted to the Clerk without the full text of the proposed ordinance when submitted, but which bear a completed circulator's affidavit, (4) signatures with a mismatched address, missing apartment number, minor mistake in an address, or which are otherwise valid but were rejected erroneously;

D.  Order the City to (1) issue a corrected certificate as to the petition's sufficiency, (2) permit Plaintiffs to file a supplementary petition thereafter pursuant to Charter Section 6.06(a), and (3) if the petition is sufficient, submit the proposed ordinance to the voters by the deadline provided in Charter Section 6.08 as if the Clerk had issued a valid certificate initially;

E.  Award Plaintiffs nominal damages of one dollar each for their § 1983 claim;

F. Award Plaintiffs' reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

G. Award Plaintiffs' costs;

H. Grant any such other relief the Court deems appropriate.

Respectfully submitted June 5, 2026,

*/s/ Nicholas L.V. Warren*
Nicholas L.V. Warren (FBN 1019018)
   *Designated Lead Counsel*
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
dtilley@aclufl.org

Anthony F. Sabatini (FBN 1018163)
**Sabatini Law Firm P.A.**
1601 East 1st Avenue
Mount Dora, FL 32757
(352) 455-2928
anthony@sabatinilegal.com

*Counsel for Plaintiffs*

15