**City Council**                    **Meeting Minutes**                    **May 21, 2026**

# City of Clearwater

*Main Library - Council Chambers*
*100 N. Osceola Avenue*
*Clearwater, FL 33755*



## Meeting Minutes

## Thursday, May 21, 2026
## 6:00 PM

## Main Library - Council Chambers

## City Council

| City Council | Meeting Minutes | May 21, 2026 |
|---|---|---|

## Roll Call

**Present:** 5 -  Mayor Bruce Rector, Vice Mayor Ryan Cotton, Councilmember David Allbritton, Councilmember Lina Teixeira and Councilmember Michael Mannino

**Also Present:** Jennifer Poirrier – City Manager, Daniel Slaughter – Assistant City Manager, Alfred Battle – Assistant City Manager, Owen Kohler – Interim City Attorney, Rosemarie Call – City Clerk, and Nicole Sprague – Deputy City Clerk.

*To provide continuity for research, items are listed in agenda order although not necessarily discussed in that order.*

*Unapproved*

## 1.  Call to Order – Mayor Rector

*The meeting was called to order at 6:00 p.m.*

## 2.  Invocation – Rev. Allee Wood of First Methodist Church Clearwater

## 3.  Pledge of Allegiance

## 4.  Special recognitions and Presentations (Proclamations, service awards, or other special recognitions. Presentations by governmental agencies or groups providing formal updates to Council will be limited to ten minutes.) - Given

**4.1**  National Safe Boating Week Proclamation May 16-22, 2026 - Betsy Scott, Flotilla Commander, and Karen Miller, Immediate Past Flotilla Commander and members of the Coast Guard Auxiliary Flotilla 11-1 Clearwater

**4.2**  Code Enforcement Appreciation Week Proclamation, June 1-5, 2026 - Sarah Green, Code Compliance Manager Planning & Development Department

**4.3**  Informational Update on Opportunity Zone 2.0 Redesignation and Nomination Submission for Census Tracts 258, 262, 264.01, and 264.02.

Staff is providing an informational update regarding the submission of Census Tracts 258, 262, 264.01, and 264.02 to Florida Commerce and the Governor's Office for consideration as designated Opportunity Zones under the federal Opportunity Zone Program.

This presentation to City Council provides:

*City of Clearwater*

**City Council**                                **Meeting Minutes**                                **May 21, 2026**

- An overview of the Opportunity Zone Program.
- Identification of the nominated census tracts submitted to Florida Commerce.
- A summary of the nomination process and timeline.
- Potential opportunities and considerations associated with designation; and
- Next steps pending state review and determination.

Opportunity Zones are a federal economic development tool intended to encourage long-term private investment in economically distressed communities through targeted capital gains tax incentives. The nominated census tracts were identified based on qualifying economic indicators, redevelopment potential, infrastructure access, and alignment with broader economic development objectives and planning considerations within the City of Clearwater.

The city currently has an existing Qualified Opportunity Zone designation that includes portions of Downtown Clearwater within Census Tracts 259.01 and 259.02. These areas were designated under the original federal Opportunity Zone framework established through the Tax Cuts and Jobs Act of 2017, which was initially introduced as a temporary federal economic development initiative intended to stimulate long-term private investment in economically distressed communities.

Historically, the original Opportunity Zone program experienced varying levels of utilization nationwide. In many communities, including portions of Clearwater, the program was underutilized due to evolving federal guidance, limited investor familiarity, market uncertainty, and the temporary nature of the original designation structure. While several redevelopment and investment projects have occurred within the City's existing Opportunity Zone area, the current Opportunity Zone 1.0 designation will transition out under the original federal framework and was not included within the City's Opportunity Zone 2.0 nomination package due to updated federal eligibility requirements.

Changes in economic conditions, private investment activity, redevelopment patterns, and updated U.S. Census Bureau demographic data resulted in the existing Downtown Clearwater Opportunity Zone census tracts no longer qualifying under the revised federal criteria established for redesignation consideration.

In 2025, the One Big Beautiful Bill Act (Public Law No. 119-21) made the Opportunity Zone Program a permanent part of the federal tax code. As part of the updated implementation framework, states and local governments are now required to reevaluate and redesignate qualifying census tracts using revised

*Page 3*

*City of Clearwater*

**City Council**                              **Meeting Minutes**                              **May 21, 2026**

federal eligibility standards and updated census-based economic indicators to continue participation in the program.

As a result, communities throughout Florida are currently competing for designation recommendations through a state review process administered by Florida Commerce and the Governor's Office. Given the increasing level of redevelopment and private investment interest occurring throughout Clearwater, maintaining Opportunity Zone eligibility is viewed as an important economic development tool that may assist the City in remaining competitive for future investment opportunities.

Failure to secure redesignation could place Clearwater at a disadvantage relative to other Florida communities seeking to attract private capital, redevelopment activity, housing investment, infrastructure funding, and business expansion opportunities associated with Opportunity Zone investment incentives.

The nominations were submitted within the timeline established by the State of Florida for consideration. City Council was previously informed of the nomination effort prior to submission. Due to the limited timeframe associated with the state nomination process and the preliminary nature of the designation request, formal community outreach was not conducted prior to submission.

At this stage, the nomination represents an eligibility and consideration process only and does not authorize specific development projects, zoning changes, financial incentives, or financial commitments by the City. Should any of the nominated census tracts receive designation approval, future project-level planning, redevelopment discussions, and investment initiatives would include opportunities for community and stakeholder engagement.

No formal action, the presentation is informational and will allow the Council to provide feedback and direction, if any, regarding future community engagement and Opportunity Zone planning efforts.

**STRATEGIC PRIORITY:**
Objective 2.1: Strengthen public-private initiatives that attract, develop, and retain diversified business sectors.
Objective 2.2: Cultivate a business climate that welcomes entrepreneurship, inspires local investment, supports eco-friendly enterprises, and encourages high-quality job growth.
Objective 2.4: Support equitable housing programs that promote household stability and reduce the incidence of homelessness within Clearwater.

*City of Clearwater*

| City Council | Meeting Minutes | May 21, 2026 |
|---|---|---|

*Economic Development and Housing Director Christopher Edwards provided a PowerPoint presentation.*

## 5. Approval of Minutes

**5.1** Approve the May 7, 2026 City Council meeting minutes as submitted in written summation by the City Clerk.

> **Councilmember Allbritton moved to approve the May 7, 2026 City Council meeting minutes as submitted in written summation by the City Clerk. The motion was duly seconded and carried unanimously.**

## 6. Consent Agenda – Approved as submitted less Item 6.6.

**6.1** Approve co-sponsorship and waiver of requested city fees for six High Impact co-sponsored special events at an estimated cost for in-kind services of $353,234.00 ($324,342.50 general fund, and $28,891.50 enterprise fund) and funding for the Community Event Co-Sponsorship Program of $110,000, for the purpose of Fiscal Year 2026/27 departmental budget submissions and authorize the appropriate officials to execute same. (consent)

**6.2** Approve an increase to the existing purchase order with Central Florida Contractors, Inc. of Seminole, Florida, for the 2025 Sidewalk Project in the amount of $500,000.00, increasing the annual not-to-exceed amount from $2,000,000.00 to $2,500,000.00, for the initial term and three, one-year renewal options, pursuant to Invitation to Bid (ITB) 25-0001-EN and authorize the appropriate officials to execute same. (consent)

**6.3** Authorize purchase orders to Choo Choo Lawn Equipment, Inc and Ruckus Investments, LC d/b/a Quality Mowers and/or Quality Power for as-needed purchase, diagnostics, and repairs services for 2-cycle and battery-operated equipment, in the cumulative annual not-to-exceed amount of $310,000.00, for initial term of May 21, 2026 through May 20, 2027, with two, one-year renewal options pursuant to Invitation to Bid (ITB) 07-26 and authorize the appropriate officials to execute same. (consent)

**6.4** Authorize an increase of $400,000.00 to Contract No. 901221 with Stolze Door Company d/b/a Overhead Door of Clearwater, extend the contract term through March 11, 2028, pursuant to Clearwater Code of Ordinances Section 2.563(1)(c), cooperative purchasing, and authorize the appropriate officials to execute same. (consent)

**6.5** Appoint Dan Carpenter for a four-year term as a Trustee of the Clearwater Firefighters' Supplemental Trust Fund in accordance with Sec. 175.061 of the Florida State Statutes. (consent)

**City Council**            **Meeting Minutes**            **May 21, 2026**

**6.6** Approve an agreement and purchase order with Locality Media, LLC dba First Due (First Due) of Danville, IN, for the implementation of fire prevention software and support services for the City of Clearwater Fire District in collaboration with Pinellas County, in an amount not-to-exceed $15,910.60, pursuant to Clearwater Code of Ordinances Section 2.563(1)(c), Piggyback, and authorize the appropriate officials to execute same.

**See below.**

**6.7** Authorize a purchase order to Material Handling Systems, Inc. for overhead crane inspections, certifications, purchase, and repairs in a total not-to-exceed amount of $286,550.00 for the term ending August 31, 2029, pursuant to Clearwater Code of Ordinances Section 2.563(1)(c), Piggyback, and authorize the appropriate officials to execute same. (consent)

**6.8** Authorize an increase to the purchase order with Rowland, Inc. of Pinellas Park for the 2023 Sewer Point Repair and Improvements, Group C, in the amount of $11,457,021.66, bringing the total for this group to $22,957,021.66; authorize and approve an agreement with CSX for railroad protective liability and license fees in the amount $2005.00, pursuant to Clearwater Code of Ordinances Section 2.563(1)(a), Single Source, and authorize the appropriate officials to execute same. (consent)

**6.9** Approve supplemental retainer agreement with Bolves Law Group, PLLC. previously known as Manson Bolves Donaldson Tanner, P.A., in regard to Bay Esplanade litigation and authorize the appropriate officials to execute same. (consent)

> **Councilmember Mannino moved to approve the Consent Agenda as submitted, less Item 6.6, and authorize the appropriate officials to execute same. The motion was duly seconded and carried unanimously.**

**6.6** Approve an agreement and purchase order with Locality Media, LLC dba First Due (First Due) of Danville, IN, for the implementation of fire prevention software and support services for the City of Clearwater Fire District in collaboration with Pinellas County, in an amount not-to-exceed $15,910.60, pursuant to Clearwater Code of Ordinances Section 2.563(1)(c), Piggyback, and authorize the appropriate officials to execute same.

> Pinellas County will be utilizing the First Due software platform for Fire and EMS services, as well as fire prevention services. Clearwater Fire & Rescues (CFR) wishes to replace Fire Prevention Mobile, its current fire prevention services software, with First Due. The software will include Occupancy Management & Pre-Incident Planning, Inspections, Inspection-Test-Maintain (ITM) Reporting, and other services that may be provided at no charge through the Pinellas County collaboration.
>
> The Occupancy Management & Pre-Incident Planning module provides management of occupancies, pre-incident mapping, ArcGIS maps, fire

*City of Clearwater*

systems, hazardous materials, and contacts.

The Inspections module will support field inspections, configurable checklists, violation management, virtual inspections, inspection scheduling, and integrated pre-incident planning.

The ITM Reporting module allows Authorities Having Jurisdiction (AHJs) to track, manage, and report on fire and life safety system inspections, testing, and maintenance. This includes a portal for service providers to upload ITM reports, automated reminders, configurable notifications, and interoperability with First Due Response and Fire Prevention modules.

Up to four hours of online training with a certified First Due instructor is included, along with implementation and configuration services.

Authorization is requested to piggyback off Sourcewell Contract #030425-LME, with First Due Holdings, Inc., through its wholly owned subsidiary Locality Media, LLC dba First Due, utilizing the City's Sourcewell Membership No. 32014, valid through July 17, 2029, with up to three, additional one-year renewal options. This piggyback contract provides a 5% discount.

The Statement of Work includes implementation, training, data migration, integrations, customer success management, support, and related assumptions. Pricing consists of a one-time implementation fee of $3,400.00, and a 17-month subscription fee of $13,348.00, less the Sourcewell 5% discount of $837.40, for a total amount not to exceed $15,910.60.
The one-time implementation service fee of $3,400.00, which covers configuration, setup, migration, and training services commencing upon execution of the agreement, will be invoiced upon execution and due within 30 days.  The renewable fee of $12,510.60 will be invoiced on or around October 1, 2026 and due within 30 days. For subsequent annual periods, CFR may renew at an annual service fee of $9,400.00, payable in advance on October 1.
This agreement will have an initial term of 17 months from the effective date, with options to renew for successive 12-month terms through the term of the piggyback contract.  Either party may terminate the agreement in accordance with its terms upon written notice.

First Due has requested acceptance of its standard terms and conditions, including indemnification language related to the construction, installation, placement or maintenance. Nothing in this agreement shall be deemed a waiver of the limitations on liability contained in Section 768.28, Florida Statutes, or the doctrine of sovereign immunity.

There will be an overlap of both programs from June 1, 2026, till October 1,

**City Council**                    **Meeting Minutes**                    **May 21, 2026**

2026 in order to migrate the information contained within our current program, Fire Prevention Mobile, into the requested new program First Due. This will facilitate our ability to access information which has been entered into our current fire inspection database without a prolonged integration period after October 1. The overlap period will also facilitate training of personnel in navigating the new data collection program.

The City will be reimbursed by Pinellas County for approximately 11.48% of the purchase cost, as the software will support fire prevention operations in unincorporated areas of the Clearwater Fire District.

**APPROPRIATION CODE AND AMOUNT:**
0101230-530300 $15,910.60
Funding for the current year is available in Fire Department cost code 0101230-530300, contractual services. Funding for future years will be requested as part of the annual budget process. The Fire Department is funded by General Fund Revenues.

**STRATEGIC PRIORITY:**
1.4  Foster safe and healthy communities in Clearwater through first-class public safety and emergency response services.


*Fire Chief Chad Pitman reviewed the item and said since the work session, the contract was changed to the City's benefit. The indemnity clause was strengthened to incorporate the limitations of Florida Statute 768.28. As a result, the effective date moved to June 1, which reduced the total subscription period by one month. This lowered the subscription fee subtotal and the Sourcewell discount, for a new Grand Total of $15,106.90, a reduction of $803.70 from the amount stated in the agenda item.*

**Vice Mayor Cotton moved to approve an agreement and purchase order with Locality Media, LLC dba First Due (First Due) of Danville, IN, for the implementation of fire prevention software and support services for the City of Clearwater Fire District in collaboration with Pinellas County, in an amount not-to-exceed $15,910.60, pursuant to Clearwater Code of Ordinances Section 2.563(1)(c), Piggyback, and authorize the appropriate officials to execute same. The motion was duly seconded and carried unanimously.**


## Public Hearings - Not before 6:00 PM

*Page 8*

*City of Clearwater*

| City Council | Meeting Minutes | May 21, 2026 |
|---|---|---|

## 7. Administrative Public Hearings

**7.1** Approve to vacate a Lake Drainage and Utility Easement for a portion of the East 20 ft. portion of Lot-12A, Clearview Lake Estates subdivision, as Recorded in Plat Book 66, Page 37 of the Public Records of Pinellas County, Florida, and pass Ordinance 9881-26 on first reading.

Owner Renita Wasilefsky requests the City to vacate said portion of the platted Lake Drainage and Utility easement.
There are no city utilities within the vacated easement area.
City staff have reviewed and approved this request.

**STRATEGIC PRIORITY:**
Embrace a culture of innovation that drives continuous improvement and successfully serves all our customers.

**Ordinance 9881-26 was presented and read by title only.**

**Councilmember Teixeira moved to approve to vacate a Lake Drainage and Utility Easement for a portion of the East 20 ft. portion of Lot-12A, Clearview Lake Estates subdivision, as Recorded in Plat Book 66, Page 37 of the Public Records of Pinellas County, Florida, and pass Ordinance 9881-26 on first reading. The motion was duly seconded and upon roll call, the vote was:**

**Ayes:** 5 - Mayor Rector, Vice Mayor Cotton, Councilmember Allbritton, Councilmember Teixeira and Councilmember Mannino

**7.2** Provide direction on the proposed Development Agreement between MHG Palm Pavilion Hotel, LP, Sixth Flag Planted LLC and the City of Clearwater for property located at 10 Bay Esplanade and 18 Bay Esplanade, providing for the allocation of 91 units from the Hotel Density Reserve under Beach by Design, and confirm a second public hearing in City Council Chambers before City Council on June 4, 2026 at 6:00 p.m., or as soon thereafter as may be heard. (HDA2026-03001)

**Site Location and Existing Conditions:**

The subject property is a 1.06-acre parcel operating as a restaurant and hotel with frontage along Bay Esplanade and Kendall Street. (241 feet and 291 feet, respectively) It is located within the Tourist (T) District and the Old Florida District of Beach by Design with an underlying future land use designation of Resort Facilities High (RFH).

**City Council**                           **Meeting Minutes**                           **May 21, 2026**

The surrounding area is characterized by a mix of uses including overnight accommodations (hotels), retail, outdoor recreation and entertainment, restaurants, and attached dwellings with heights ranging from one to eight stories. There is a one-story service station adjacent to the site and a one-story City Fire Station 46 located across Bay Esplanade at the northwest corner of Bay Esplanade and Mandalay Avenue. Mandalay Avenue to the east has largely been improved according to Beach by Design.

**Site History:**

The subject property consists of two portions developed in 1926. The west portion contains an existing 7,895-square-foot restaurant, while the east portion contains 30 overnight accommodation units. The restaurant is proposed to be preserved, whereas the existing hotel on the east portion is proposed to be demolished.

Although the overall size of the development site has not changed, the two previously separate parcels have been consolidated into a single condominium plat consisting of two ownership parcels.

The two portions of the site have distinct regulatory histories, summarized below:

West portion of the site (10 Bay Esplanade):

On February 19, 2019, the Community Development Board (CDB) approved a Level Two Flexible Development application (FLD2018-11028) for proposed roof replacement over an existing restaurant deck seaward of the Coastal Construction Control Line (CCCL).

East portion of the site (18 Bay Esplanade):

On August 8, 2024, the Community Development Board (CDB) approved a Level Two Flexible Development application (FLD2024-02007) for a termination of status of nonconformity to recognize the nonconforming hotel density of 30 units.

**Development Proposal:**

The proposal is to remove all the existing site improvements on the 1.06-acre site and to construct a hotel with 144 overnight accommodation units as well as the preservation of the existing restaurant as an accessory to the primary overnight accommodations use. The underlying Resort Facilities High (RFH) future land use designation allows for 50 overnight accommodations units per acre or 1.2 FAR for nonresidential uses.

To achieve the proposed number of units, the project utilizes 53 units from the property acreage, in addition to the requested 91-unit allocation from the Hotel Density Reserve (Reserve) through Beach by Design.

As stated, the request includes 144 rooms which equates to 136 units per acre.

*City of Clearwater*

**City Council**                         **Meeting Minutes**                         **May 21, 2026**

The building will be 75 feet in height as measured from the established design flood elevation to flat roof. The proposal includes a tropical modern architecture, which is consistent with and complements the tropical vernacular envisioned in Beach by Design. The request includes a conceptual site plan and accompanying building elevations (Exhibit B).

The site will be accessed via a two-way driveway from Bay Esplanade and Kendall Street at the south and north sides of the property, respectively, which will provide access to the parking garage component of the development. The primary pedestrian entrance will be located at the south side of the site and a secondary pedestrian entrance will be located at the north side of the site.

In addition to parking, the ground floor of the new building proposes contains an elevator to the lobby and a pedestrian access to the existing restaurant on the west side of the property. The first four floors of the new building will contain a parking garage as well as miscellaneous back-of-house components such as maintenance rooms, trash and laundry facilities.  The fifth floor will include an amenity area. The sixth through nineth floors will be devoted entirely to guest rooms..

**Proposal's Consistency with the Community Development Code (CDC):**

*Minimum Lot Area and Width:*
Pursuant to CDC Table 2-802, the minimum required lot area and width for an overnight accommodations use is 20,000 square feet and between 100 and 150 feet in lot width, respectively. The subject property is 46,265 square feet in area and the minimum width of the property is approximately 241 feet wide. The site is consistent with these Code provisions.

*Minimum Setbacks:*
The conceptual site plan depicts a north front setback of 15 feet along Kendall Street, a south front setback of 10 feet along Bay Esplanade, an existing west side setback of zero adjacent to the beach and side setbacks of 5 feet along other property lines. The proposed setbacks and height may be approved as part of a Level Two (FLD) application, subject to meeting the applicable flexibility criteria of the Community Development Code.

*Maximum Height:*
Section B of the Design Guidelines within Beach by Design specifically addresses height.  The proposal provides for a building 75 feet in height as measured from the design flood elevation where a height of up to 100 feet is

permitted as prescribed by the CDC (subject to meeting the applicable flexibility criteria of the CDC and approved as part of a Level Two Flexible Development application) and as limited by any applicable Beach by Design requirements. The height of the proposed building is consistent with the guidelines of Beach by Design.

*Minimum Off-Street Parking:*
The 144-room overnight accommodations use requires a minimum of 173 off-street parking spaces.  A parking garage located on the first four levels of the

*Page 11*

*City of Clearwater*

**City Council**                     **Meeting Minutes**                     **May 21, 2026**

building will provide 173 spaces. This is consistent with the applicable Sections of the CDC.

*Landscaping:*
While a formal landscape plan is not required to be submitted for review at this time, the conceptual landscape areas depicted on the site plan show that adequate spaces for foundation landscaping will be provided along all street frontages. Since no perimeter landscape buffers are required in the Tourist (T) District, the proposed landscape areas meet or exceed what is required. It is noted, however, that flexibility may be requested/necessary as part of a Comprehensive Landscape Program which would be reviewed at time of formal site plan approval.

**Proposal's Consistency with Beach by Design:**

*Design Guidelines:*
A review of the provided architectural elevations and massing study was conducted and the proposed building does appear to be generally consistent with the applicable Design Guidelines established in Beach by Design. However, a more formal review of these Guidelines will need to be conducted as part of the final site plan approval process.

*Hotel Density Reserve:*
The project has been reviewed for compliance with those criteria established within Beach by Design concerning the allocation of hotel rooms from the Reserve. The project appears to be generally consistent with those criteria, including that the development complies with the Metropolitan Planning Organization's (MPO) countywide approach to the application of traffic concurrency management for transportation facilities. The submitted Traffic Impact Study concludes that traffic operations at nearby intersections and on adjacent roadways would continue at acceptable levels of service. Staff believes that the proposal meets the intent of Beach by Design and approval of the request.

**Standards for Development Agreements:**

CDC Section 4-606 sets forth the procedures and criteria for reviewing development agreements. Specifically, development agreements shall be consistent with Clearwater 2045, the city's Comprehensive Plan. The proposal furthers the goals, objectives and policies of the Comprehensive Plan as provided below.

> Goal QP 3: Support the on-going transformation of the Downtown and
>
> Clearwater Beach Activity Centers as high intensity, walkable, and attractive regional centers for living, working, shopping, and entertainment.
>
> Objective QP 3.3: Continue to use Beach by Design: A Preliminary Design for Clearwater Beach and Design Guidelines (Beach by Design) to guide development, redevelopment, and placemaking on Clearwater Beach.

**City Council**                          **Meeting Minutes**                          **May 21, 2026**

Policy QP 3.3.4: Continue to utilize the Hotel Density Reserve allocation as established in Beach by Design to facilitate hotel development on Clearwater Beach..

The proposal is in compliance with the standards for development agreements, is consistent with the Comprehensive Plan and furthers the vision of beach redevelopment set forth in Beach by Design. The proposed Development Agreement will be in effect for a period not to exceed ten years, meets the criteria for the allocation of rooms from the Hotel Density Reserve under Beach by Design and includes the following main provisions:

- Includes conceptual site plans, architectural drawings, elevations and perspectives in Exhibit B that appear to be generally consistent with the applicable Design Guidelines established in Beach by Design;

- Requires the developer to obtain site plan approval within one year of approval, commence vertical construction within four years from the date of site plan approval, and obtain a certificate of occupancy within six years from the date of site plan approval;

- Requires the return of any hotel unit obtained from the Hotel Density Reserve that is not constructed;

- Prohibits the conversion of any hotel unit allocated from the Hotel Density Reserve to a residential use and requires the recording of a covenant restricting use of such hotel units to overnight accommodations usage; and

- Requires a legally enforceable mandatory evacuation/closure covenant that the hotel will be closed as soon as practicable after a hurricane watch that includes Clearwater Beach is posted by the National Hurricane Center.

**Changes to Development Agreements:**

Pursuant to Section 4-606.I, CDC, a Development Agreement may be amended by mutual consent of the parties, provided the notice and public hearing requirements of Section 4-206 are followed.  Revisions to conceptual site plans and/or architectural elevations attached as exhibits to this Development Agreement shall be governed by the provisions of the CDC, Section 4-406. Minor revisions to such plans may be approved by the Community Development Coordinator.  Other revisions not specified as minor shall require an amendment to this Development Agreement.

**Summary and Recommendation:**

The proposal appears to be generally consistent with applicable components of the Community Development Code and Beach by Design and the city's Comprehensive Plan. Staff is supportive of the request.

*City of Clearwater*

**City Council**           **Meeting Minutes**           **May 21, 2026**

*Planning Division Manager Ted Kozak provided a PowerPoint presentation.*

*Applicant representative Katie Cole provided a PowerPoint presentation.*

*Five individuals spoke in opposition.*

*One individual submitted an eComment in opposition (see page 23).*

*One individual submitted an email in opposition (see page 26).*

*Ms. Cole said the City's Beach by Design created an opportunity for specific allocations of these rooms to certain properties within the beach area. At the time the reserve units were created, Beach by Design contemplated the very high traffic that exists today. She said Beach by Design states the Old Florida district supports the development of new overnight accommodations and attached dwelling throughout the district, with retail and commercial mixed use development fronting Mandalay Avenue between Bay Esplanade and Somerset Street. This area is a tourist designated vicinity and a transition to the neighborhood. She said additional information regarding parking will be provided at the next meeting.*

*In response to questions, Mr. Kozak said the bank of units prior to this request was 10 and 100 units came back because some projects expired. He said available units are assigned on a first come first served basis. If the 91 units are allocated, 19 units will remain in the density reserve pool. If the 19 remaining units are allocated, the reserve pool will go down to zero and the hotel density reserve pool is done. Mr. Kozak said Beach by Design contemplates the additional density and amount of the infrastructure needed for the additional 1385 units used to create the reserve pool.*

**Councilmember Allbritton moved to confirm a second public hearing in City Council Chambers before City Council on June 4, 2026 at 6:00 p.m., or as soon thereafter as may be heard. The motion was duly seconded and carried unanimously.**

7.3   Amend Council Rule 6 to temporarily restore public comment regarding matters not on the agenda for an additional three-month period and adopt Resolution 26-10.

**City Council**                              **Meeting Minutes**                              **May 21, 2026**

On February 5, 2026, the City Council adopted Resolution 26-02 which temporarily restored a time for citizens to publicly address the City Council regarding topics not on the agenda.  The changes to Rule 6 included the following:

- This portion of the meeting occurs near the end of the meeting.
- The time period for citizens to comment on non-agenda items is 30 minutes.
- No time-sharing among or between individual speakers or groups is allowed.
- These changes sunset on February 8, 2026 without further City Council action.

The City Council desires to extend the restoration of Citizens to be Heard on topics pertaining to City business but not on the agenda for an additional three months.  Resolution 26-10 extends the sunset provision until August 7, 2026. Following its expiration on August 7, 2026, the phrasing of Council Rule 6 will revert to the version that existed on February 4, 2026.

*Three individuals spoke in support.*

**Resolution 26-10 was presented and read by title only.**

**Councilmember Mannino moved to amend Council Rule 6 to temporarily restore public comment regarding matters not on the agenda for an additional three-month period and adopt Resolution 26-10. The motion was duly seconded and upon roll call, the vote was:**

**Ayes:** 5 -  Mayor Rector, Vice Mayor Cotton, Councilmember Allbritton, Councilmember Teixeira and Councilmember Mannino

**7.4**  Approve Certificate of City Clerk regarding a Citizen Initiative Petition requiring voter approval for the vacation of public right-of-way in the Downtown. (APH)

Article VI of the city charter provides that any five voters may commence initiative proceedings by filing with the City Clerk an affidavit and the proposed initiative ordinance.  The five voters shall constitute as the Petitioner's Committee.

The city charter requires that the initiative petition must be signed by voters of the city equal in number to at least 10 % of the total number of voters registered to vote in the last regular city election; that all papers of a petition must be in uniform size and style; and that each paper of a petition shall have attached to it an affidavit of the circulator.

**City Council**                    **Meeting Minutes**                    **May 21, 2026**

In the last regular city election, there were 70,675 registered voters.  For an initiative petition to be sufficient, the petition would need to be signed by at least 7,067 voters.

On June 13, 2025, the Petitioner's Committee, comprised of five people, filed an initiative petition and a proposed ordinance requiring voter approval for the vacation of public right-of-way in Downtown Clearwater CRA.

On October 7, 2025, the Petitioner's Committee added two additional people because one of the original five members was not a qualified voter of Clearwater.

The first day that the Petitioner' Committee included five voters was October 7, 2025.

On March 17, 2026, the Petitioner's Committee submitted petitions signed by approximately 8,051 individuals.

Pursuant to Section 6.06, staff reviewed the Initiative Petition and determined that the signature petitions contained 2,702 valid signatures and 5,349 invalid signatures.

4,306 signatures were collected prior to the Petitioner's Committee being comprised of five voters on October 7, 2025.  Since the Petitioner's Committee was not comprised of five voters prior to October 7, 2025, all signatures collected prior to October 7, 2025 are invalid.  Section 6.05(b) requires the petition contain or have attached hereto throughout the circulation the full text of the ordinance proposed.  The petitions submitted on March 17, 2026 did not contain the full text of the proposed ordinance or have attached hereto the proposed ordinance.

The Initiative Petition was deemed insufficient due to the lack of required number of valid signatures as required by Section 6.05(a) and failing to comply with Section 6.05(b).  Pursuant to Section 6.06, the Certificate of City Clerk was issued on April 2, 2026.  The Certificate was sent by registered mail to the Petitioner's Committee and was received by the Committee on April 7, 2026.

On April 6, 2026, the Petitioner's Committee submitted a notice of intention to amend pursuant to Section 6.06(a).

On April 17, 2026, the Petitioner's Committee submitted petitions signed by approximately 701 individuals.

Upon examination of the Amended Initiative Petition, it was determined that the signature petitions contained 506 valid signatures and 195 invalid signatures.

On April 10, 2026, the Pinellas County Supervisor of Elections provided the city with an additional voter roll containing 309 registered voters.  Based upon this additional voter roll, it was determined that an additional 3 signatures were signed by individuals who are voters of the City and are valid.

4,306 signatures were collected prior to the Petitioner's Committee being comprised of five voters on October 7, 2025.  Section 6.04 of the charter requires five voters to commence initiative proceedings.  Since the Petitioner's Committee was not comprised of five voters prior to October 7, 2025, all signatures collected prior to October 7, 2025 are invalid.
A summary of the Initiative Petition and Amendment is as follows:
Total signatures submitted:8752
Total valid signatures:        3211
Total invalid signatures:     5541
Total invalid signatures due to address not matching voter roll:35
Total number of instances where voter signed more than once:40

The Petitioner's Committee requested that 4,306 signatures be reconsidered and not excluded without review.  Staff reviewed and determined that 1,231 signatures were signed by individuals who were not registered voters of the City and would be invalid.  2,956 signatures were signed by individuals who are voters of the City and would be valid if the signatures collected prior to October 7, 2025 are considered.  Therefore, even if signatures collected prior to October 7, 2025 are considered, the Initiative Petition and Amendment are still insufficient due to the lack of required number of valid signatures.

A summary is as follows:
Total signatures submitted:8,752
Total valid signatures if signatures collected prior to October 7, 2025 are counted:6,167
Total invalid signatures if signatures collected prior to October 7, 2025 are counted:  2,391
Total invalid signatures due to address not matching voter roll:     90
Total number of instances where voter signed more than once:  104

The Initiative Petition and Amendment are deemed insufficient due to the lack of required number of valid signatures as required by Section 6.05(a) and failing to comply with Section 6.05(b).  The Certificate of City Clerk

**City Council**                    **Meeting Minutes**                    **May 21, 2026**

(Petitioner's Amendment) was issued on April 22, 2026.

On April 23, 2026, the Petitioner's Committee requested Council Review pursuant to Section 6.06(b) of the charter.

Staff recommends that City Council approve the Certificate of City Clerk.

*The Council recessed from 7:06 p.m. to 7:15 p.m.*

*Thirty-four individuals spoke in opposition.*

*One individual spoke in support.*

*In response to comments, the City Clerk said an inactive voter is an individual who has not voted during the last two election cycles and communication attempts by the Supervisor of Elections via mail have been returned. Inactive voters who signed the petition were not counted and identified as not registered because they were not on the active voter roll. Due to a case, the State was directed on December 23, 2025 not to count inactive voters when it comes to petitions and that is why the Supervisor of Elections only provided the active voter roll database. The Interim City Attorney said he was not aware of any case law that states the rejection of the Petitioners Committee because it was not comprised of five voters violates the First Amendment. He was not aware of any legal authority that states not being registered to vote is something that is curable. Regarding comments that the proposed ordinance is not required to be attached to the petition signature forms, he said he disagrees; City Charter Section 6.05(b) states, "Petitions shall contain or have attached thereto throughout their circulation the full text of the ordinance proposed or sought to be reconsidered," and the signature petition forms, in the first full paragraph, underlines that a copy of the proposed ordinance is attached. He said the City Clerk specified the grounds of insufficiency in the certificate as required by City Charter, Section 6.06, such as lack of voters [Sec. 6.05(a)] and not having the ordinance attached [Section 6.05(b)].*

*In response to questions, the City Clerk said there are approximately 16,000 individuals on the inactive voter roll. She said the Committee's amended petition included 91 individuals who were not registered and 519 in the original filing. She said there were 549 individuals who were not registered that signed the petition prior to the Committee being complete. If all signatures were added, the Committee still fell short of the required number of signatures because many of the individuals who signed did not live within Clearwater city limits.*

*City of Clearwater*

*Discussion ensued with comments made that collecting approximately 8,000 signatures was a herculean effort, but the threshold of required signatures was not met. Support was expressed to approve the Certificate of the City Clerk.*

**Vice Mayor Cotton moved to approve Certificate of City Clerk regarding a Citizen Initiative Petition requiring voter approval for the vacation of public right-of-way in the Downtown. The motion was duly seconded and carried unanimously.**

## 8.  Second Readings - Public Hearing

**8.1**  Adopt Ordinance 9864-26 on second reading, to change the land use designation for certain real property located on north side of Nursery Road, approximately 186 feet east of Rosetree Court, whose post office address is 2446 Nursery Road, from Residential Urban (RU) to Residential Medium (RM).

**Ordinance 9864-26 was presented and read by title only.**

**Councilmember Teixeira moved to adopt Ordinance 9864-26 on second and final reading. The motion was duly seconded and upon roll call, the vote was:**

**Ayes:** 5 -  Mayor Rector, Vice Mayor Cotton, Councilmember Allbritton, Councilmember Teixeira and Councilmember Mannino

**8.2**  Adopt Ordinance 9890-26 on second reading, annexing certain real property whose post office address is 2448 Nursery Road, Clearwater, Florida 33764, into the corporate limits of the city and redefining the boundary lines of the city to include said addition.

**Ordinance 9890-26 was presented and read by title only.**

**Councilmember Allbritton moved to adopt Ordinance 9890-26 on second and final reading. The motion was duly seconded and upon roll call, the vote was:**

**Ayes:** 5 -  Mayor Rector, Vice Mayor Cotton, Councilmember Allbritton, Councilmember Teixeira and Councilmember Mannino

**8.3**  Adopt Ordinance 9891-26 on second reading, amending the future land use element of the Comprehensive Plan of the city to designate the land use for certain real property whose post office address is 2448 Nursery Road, Clearwater, Florida 33764, upon annexation into the City of Clearwater, as Residential Urban (RU).

**Ordinance 9891-26 was presented and read by title only.**

**City Council**  **Meeting Minutes**  **May 21, 2026**

> **Councilmember Mannino moved to adopt Ordinance 9891-26 on second and final reading. The motion was duly seconded and upon roll call, the vote was:**
>
> **Ayes:** 5 -  Mayor Rector, Vice Mayor Cotton, Councilmember Allbritton, Councilmember Teixeira and Councilmember Mannino

**8.4** Adopt Ordinance 9892-26 on second reading, amending the Zoning Atlas of the city by zoning certain real property whose post office address is 2448 Nursery Road, Clearwater, Florida 33764, upon annexation into the City of Clearwater, as Medium Density Residential (MDR).

> *One individual expressed concerns regarding the management of the facility.*
>
> **Ordinance 9892-26 was presented and read by title only.**
>
> **Vice Mayor Cotton moved to adopt Ordinance 9892-26 on second and final reading. The motion was duly seconded and upon roll call, the vote was:**
>
> **Ayes:** 5 -  Mayor Rector, Vice Mayor Cotton, Councilmember Allbritton, Councilmember Teixeira and Councilmember Mannino

**8.5** Adopt Ordinance 9893-26 on second reading, annexing certain real property whose post office address is Unaddressed Sunset Point Road, Clearwater, Florida 33759, into the corporate limits of the city and redefining the boundary lines of the city to include said addition.

> **Ordinance 9893-26 was presented and read by title only.**
>
> **Councilmember Teixeira moved to adopt Ordinance 9893-26 on second and final reading. The motion was duly seconded and upon roll call, the vote was:**
>
> **Ayes:** 5 -  Mayor Rector, Vice Mayor Cotton, Councilmember Allbritton, Councilmember Teixeira and Councilmember Mannino

**8.6** Adopt Ordinance 9894-26 on second reading, amending the future land use element of the Comprehensive Plan of the city to designate the land use for certain real property whose post office address is Unaddressed Sunset Point Road, Clearwater, Florida 33759, upon annexation into the City of Clearwater, as Residential Urban (RU).

> **Ordinance 9894-26 was presented and read by title only.**
>
> **Councilmember Allbritton moved to adopt Ordinance 9894-26 on second and final reading. The motion was duly seconded and**

*City of Clearwater*

**City Council**                          **Meeting Minutes**                          **May 21, 2026**

**upon roll call, the vote was:**

**Ayes:** 5 -  Mayor Rector, Vice Mayor Cotton, Councilmember Allbritton, Councilmember Teixeira and Councilmember Mannino

8.7   Adopt Ordinance 9895-26 on second reading, amending the Zoning Atlas of the city by zoning certain real property whose post office address is Unaddressed Sunset Point Road, Clearwater, Florida 33759, upon annexation into the City of Clearwater, as Low Medium Density Residential (LMDR).

**Ordinance 9895-26 was presented and read by title only.**

**Councilmember Mannino moved to adopt Ordinance 9895-26 on second and final reading. The motion was duly seconded and upon roll call, the vote was:**

**Ayes:** 5 -  Mayor Rector, Vice Mayor Cotton, Councilmember Allbritton, Councilmember Teixeira and Councilmember Mannino

## 9.  Citizens to be Heard on topics pertaining to city business but not on the agenda.

*Rudy Michalek encouraged the City to update Beach by Design, which has been in place for 30 years, by addressing the process of allocating units from density reserve pool and determining if the units are truly needed.*

*Charles Klischer expressed concerns of human trafficking practices making its way into the area.*

## 10.  City Manager Reports – None.

## 11.  City Attorney Reports – None.

## 12.  Closing comments by Councilmembers (limited to 3 minutes)

*Councilmembers Teixeira and Mannino reviewed recent events and congratulated Frank Hibbard for being recognized for his outstanding contributions to our community by Scouting America.*

*Councilmember Allbritton read an excerpt on an article Joe Burdette wrote about Memorial Day.*

## 13.  Closing Comments by Mayor

*Mayor Rector reviewed recent and upcoming events. He thanked all who attended and participated tonight.*

*City of Clearwater*

**City Council**                    **Meeting Minutes**                    **May 21, 2026**

## 14.  Adjourn

*The meeting adjourned at 9:47 p.m.*

Mayor
City of Clearwater

Attest

City Clerk

*City of Clearwater*

# City Council on 2026-05-21 6:00 PM
**Meeting Time: 05-21-26 18:00**

## eComments Report

| Meetings | Meeting Time | Agenda Items | Comments | Support | Oppose | Neutral |
|---|---|---|---|---|---|---|
| City Council on 2026-05-21 6:00 PM | 05-21-26 18:00 | 40 | 1 | 0 | 1 | 0 |

## Sentiments for All Meetings

The following graphs display sentiments for comments that have location data. Only locations of users who have commented will be shown.

## Overall Sentiment



Draft

23

## City Council on 2026-05-21 6:00 PM
**05-21-26 18:00**

| Agenda Name | Comments | Support | Oppose | Neutral |
|---|---|---|---|---|
| 7.2 26-09 Provide direction on the proposed Development Agreement between MHG Palm Pavilion Hotel, LP, Sixth Flag Planted LLC and the City of Clearwater for property located at 10 Bay Esplanade and 18 Bay Esplanade, providing for the allocation of 91 units from the Hotel Density Reserve under Beach by Design, and confirm a second public hearing in City Council Chambers before City Council on June 4, 2026 at 6:00 p.m., or as soon thereafter as may be heard. (HDA2026-03001) | 1 | 0 | 1 | 0 |

## Sentiments for All Agenda Items

The following graphs display sentiments for comments that have location data. Only locations of users who have commented will be shown.

## Overall Sentiment



Agenda Item: eComments for 7.2 26-09 Provide direction on the proposed Development Agreement between MHG Palm Pavilion Hotel, LP, Sixth Flag Planted LLC and the City of Clearwater for property located at 10 Bay Esplanade and 18 Bay Esplanade, providing for the allocation of 91 units from the Hotel Density Reserve under Beach by Design, and confirm a second public hearing in City Council Chambers before City Council on June 4, 2026 at 6:00 p.m., or as soon thereafter as may be heard. (HDA2026-03001)

Overall Sentiment



**Dennis McDermott**
Location:
Submitted At:  4:47pm 05-20-26

A. The included traffic study concludes, "No improvements to the intersection nor to the driveways are necessary. The developer's financial responsibility based on the increase in trip generation for the hotel is $0".
Observation: The Traffic Study completely ignores the overall Beach by Design focus on a holistic approach to beach development. The addition of density on one beach parcel may not materially impact traffic within a 500 foot radius of that subject parcel, however the cumulative effect resulting from that and similar variances on other parcels necessitates a broader look at the overall transportation/mobility infrastructure.
B. Beach by Design tells the reader, "the primary mode of transportation on Clearwater Beach is the private automobile. Between 35,000 and 55,000 vehicles pass through the Beach Roundabout on a daily basis." It includes a deep look at Mobility, both on the beach itself, and the arrival and distribution system which enables ingress and egress between the mainland and the Beach.
Successful outcomes of Beach by Design concepts are predicated on constant and unwavering attention by the City of Clearwater to (a) ration automobile access to Clearwater Beach, at least during periods of peak demand; (b) expand the use of alternative modes of transportation for intra-Clearwater Beach trips; and (c) improve the function of the road network on Clearwater Beach.
When a developer is linearly focused on one aspect of Beach by Design to promote special accommodations to enable extraordinary economic value-added to his specific project [apparently at the expense of the comprehensive multi-dimensional approach advocated in the Plan], it seems that the City is obligated to put a halt to the planning process until such time the proposed project can be reviewed in the total context of Beach by Design.
Conclusion: The City can plan its future, or have its future planned for us by developers.

25

## Call, Rosemarie

| | |
|---|---|
| **From:** | Jeffrey Chell <jeffrey.chell18@gmail.com> |
| **Sent:** | Tuesday, May 19, 2026 2:31 PM |
| **To:** | ClearwaterCouncil |
| **Subject:** | New Hotel at the Palm Pavillion |

**CAUTION:** This email originated from outside of the City of Clearwater. Do not click links or open attachments unless you recognize the sender and know the content is safe.



**This message needs your attention**

- This is their first email to you.

Mark Safe    Report

Powered by Mimecast

Dear Council Members

As I am unable to attend the public comment meeting Thursday on this topic, I would like to voice my objection via this email.

My area is North Beach has had several building projects since we acquired our condo in 2009. Three hotels (CW Resort, Courtyard and Fairfield Inn) have all been built in the last few years. In addition, new Condos and Apartments have been built on the beach at Avalon Street.

These have increased the amount of traffic valuing it difficult to get to our condo even beyond the typical traffic during pedal season and weekends. Also, a number units in the condo complexes in our area have been sold and the current owners are using their property as monthly or even weekly rentals further increasing traffic.

I believe North Beach doesn't need another large hotel competing with the smaller hotels and causing further congestion. Our water, sewer and other utilities are already stretched in the area and further large developments will cause more strain especially with the risks associated with the hurricane season.

Please give our community time to absorb the more recents growth in hotel and rental accommodations before adding another.

Jeffrey Chell
521 Mandalay Ave
#708
Clearwater Beach, FL 33767