IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAVE THE GARDEN, BROOKS
GIBBS, KELLY MYER, JESSICA
ANDUJAR, TONATIUH TELLO, JILL
GIBBS, WILLIAM MATHIS, and
JANICE BASLER,

     *Plaintiffs*,

v.

CITY OF CLEARWATER,

     *Defendant*.

_____/

Case No. 8:26-cv-1662-KKM-AEP

**PLAINTIFFS' REPLY IN SUPPORT OF
PRELIMINARY INJUNCTION MOTION**

Plaintiffs address a few points from the City's response (ECF No. 18) to their preliminary injunction motion (ECF No. 8).

**I.    The City does not try to defend most of its erroneous and illegal signature rejections.**

The City's response is most notable for what it does not include: a defense of its rejection of valid petitions for plainly erroneous reasons. For example, the City does not dispute that Paul Panilio's signature was rejected because "Paul" was searched as his last name; that Renee Dubuque was rejected because "Dubugue" was searched; that a "William Brown" was rejected because he was searched as "M. Brown"; that multiple voters were erroneously rejected for having registered after signing; that a voter whose registration address is the same as on the petition was rejected for having a different address; that all petitions had attached to them the initiative's full text when

1

circulated; or any of the other errors Plaintiffs identify in the Motion and attached declarations and audit notes.[1] *See* Motion at 11–12. The City fails to defend these errors because they cannot be justified.

The City's only response to these numerous mistakes is that the Court must presume the Clerk's judgment is correct. Response at 19 (citing *Krivanek v. Take Back Tampa Pol. Comm.*, 625 So.2d 840, 844–45 (Fla. 1993)). Any applicable presumption is overcome by the evidence that the Clerk erroneously rejected numerous signatures, in violation of the Charter's rules laying out who may sign a petition and the limited reasons why a signature can be rejected. In contrast, *Krivanek* challenged Tampa's rejection of signatures for a reason that state law and binding agency guidance "expressly addressed"; the court found Tampa properly rejected the signatures because it followed "a reasonable and correct interpretation of the statute." 625 So.2d at 844–45. Here, the City rejected petitions for reasons authorized by *no* statute, contravening the Charter's dictates—"clear, substantial departures from essential requirements of law." *Id.* at 845 (quoting *Boardman v. Esteva*, 323 So.2d 259, 269 n.5 (Fla. 1975)).

## II. *All* voters—not just active voters—may sign petitions.

The City insists that, while the Charter provides that "[t]he voters of the city shall have the power to propose ordinances," what the Charter *really* means is that only *active* voters have that power. Response at 17–18. This contradicts the text's plain

---

[1] Due to the inadvertence of counsel, three of the examples listed in the second and third bullets on page 11, citing Gibbs Decl. ¶¶ 7–8, are not described in the same way as in the declaration (Beatriz Dezengotita, Jessica Perez-Mercelino, and the voter with 7s entered as 2s). The declaration accurately describes the Clerk's errors in searching these names and addresses.

meaning and improperly inserts a word to express an intent that is not otherwise there. *See Smith v. State*, 75 So.3d 800, 802 (Fla. 5th DCA 2011).

The City quotes a portion of Florida Statutes § 98.065(4)(d) in support of its argument, but that section does not mean what the City says it does. That provision states: "Names on the inactive list may not be used to calculate the number of signatures needed on any petition." Fla. Stat. § 98.065(4)(d). This means that, when calculating the *number* of signatures a petition proponent needs to collect *to attain ballot status*, only active voters are used. Thus, if a local charter provides that a petition needs 10% of registered voters, that figure is calculated by using the number of active—not all—voters. The reason is obvious: the number of inactive voters (who may be unlikely to sign a petition) will then not unfairly inflate the ballot-status threshold. If the Legislature intended to prohibit inactive voters from signing petitions, it would have simply said so. Indeed, to accomplish that result, it would have been *required* to do so.

*Byrd v. Smart & Safe Florida* does not support the City's argument. *Smart & Safe* did not comment *at all* on whether § 98.065(4)(d) prohibits inactive voters from signing petitions. Beyond repeating the text, the decision does not comment on the statutory directive or its meaning at all. No. 1D2026-0145, 2026 WL 184610, at *3 (Fla. 1st DCA Jan. 23, 2026). Rather, it held that the Secretary of State's "non-binding requests" to SOEs did not create a right subject to a declaratory-judgment action, and thus the trial court's injunction was in error. *Id.* at *4–5. The First DCA did not pass upon the underlying correctness of the Secretary's requests.

In fact, *Smart & Safe* only further demonstrates that the City's characterization

3

of the voter rolls is incorrect. An inactive voter is only removed from the statewide voter registration system after they fail to take one of the steps to return to active status by the second general election after they are designated inactive. *Id.* at *3 (citing Fla. Stat. § 98.065(4)(d)). Until then, an inactive voter remains registered, in the statewide voter registration system, and eligible to vote.[2]

### III.    The Clerk cannot reject petitions because they were collected before the petitioners' committee was comprised of five voters.

The Charter establishes a clear process for initiatives: the petitioners' committee files an affidavit, the Clerk issues the blank petitions, the committee submits the signed petition, and the Clerk completes a certificate as to its sufficiency. Charter §§ 6.04–.06. "Grounds for insufficiency are only those specified in section 6.05[.]" § 6.06(a). The Clerk was without authority to reject petition signatures because they were collected before the petitioners' committee was comprised of five voters; that is not one of the grounds specified in § 6.05.

Analogously, Florida law lays out requirements for candidates seeking to run for office. They must meet certain qualifications, like age and residency, and submit paperwork to the Secretary of State, including financial disclosures and affidavits regarding their party registration. *See generally* Fla. Stat. ch. 99. But like the Clerk, the Secretary of State's review is limited. The Secretary's "function is limited to assessing

---

[2] Fla. Division of Elections, Voter Registration – New and Removed, https://dos.fl.gov/elections/data-statistics/voter-registration-statistics/voter-registration-reports/voter-registration-new-and-removed/ (updated June 11, 2026) ("An inactive voter remains eligible to vote until he or she is removed from the official list of registered voters.").

whether the required items have been properly and timely filed and whether each item is facially complete." *Mayfield v. Fla. Sec'y of State*, 402 So. 3d 1002, 1006 (Fla. 2025).

Like the candidate-qualifying statutes, the Charter imposes on the Clerk a ministerial duty to process the petition forms and review them for only the enumerated grounds. Perhaps the Clerk should not have issued the blank petitions after reviewing the committee's affidavit. Perhaps the requirement that the committee be comprised of five voters is enforceable through methods outside the petition process itself, as is the case with similar candidate-qualifying rules. *See Jones v. Schiller*, 345 So.3d 406, 414 (Fla. 1st DCA 2022) (holding that a candidate who violated requirement that she be registered with her political party for a year could not be removed from the ballot, but there may be other remedies for her false statement). Regardless, the Charter is clear that the Clerk can only find a petition insufficient for specified reasons. The petitioners' committee's composition is not among them.[3]

**IV.    *Buckley* governs Plaintiffs' First Amendment claim.**

The City argues that, because the Charter does not require all circulators—just petitioners' committee members—be voters, *Buckley v. American Constitutional Law Foundation* is inapplicable. Response at 8–12. This ignores the significance of the Charter making committee members "responsible for circulating the petition[.]"

---

[3] The City argues that petitions collected before October 7 were rejected because "no initiative process existed until October 7, 2025." Response at 17. If that were true, then the Clerk should have required a new affidavit signed by all five committee members and setting out the proposed ordinance (since the Charter requires the committee file "*an*" affidavit"), and then should have issued new petition blanks as required by § 6.04. But she did not do so, instead treating the affidavit of the two additional committee members as a supplement to the original affidavit.

§ 6.04. This requirement ties the committee members to the core political speech *Buckley* protects. And while the Ninth Circuit may have taken a more constrained view of *Buckley*, the City cites no published Eleventh Circuit case that follows that view. *See* Response at 13–16 (citing *Greer v. Aguilar*, No. 2:25-cv-2581, 2026 WL 592736 (D. Nev. Mar. 3, 2026, *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520 (9th Cir. 2015), and *Fla. Decides Healthcare Inc. v. Fla. Sec'y of State*, No. 25-12370, 2025 WL 3738554 (11th Cir. Sept. 9, 2025)). A straightforward application of *Buckley* compels subjecting Clearwater's requirement that committee members be voters to strict scrutiny, and enjoining it.

## V.  Save the Garden is not preempted, but that issue is premature.

The City argues that voting on Save the Garden would be "an initiative process in regard to a development order" or "land development regulation" preempted by Florida Statutes § 163.3167(8). The first case the City cites for this proposition undermines its position. In *Mullen v. Bal Harbour Village*, the Third DCA found a petition requiring voter approval for "certain, defined commercial development" was preempted as regarding a development order. 241 So.3d 949, 951, 956 (Fla. 3rd DCA 2018). But even Bal Harbour agreed that the *connected* petition requiring voter approval before the Village "sold, leased, or disposed of real property" was *not* preempted and could have been submitted to the voters on its own. *Id.* at 951, 958 & n.15. Save the Garden is akin to *that* petition—a limit on the City's ability to dispose of property, not govern applicants for development orders or regulate land development.

Regardless, the Charter does not permit the City to reject a petition because it

6

is preempted by § 163.3167(8), and in any event the City did not reject Save the Garden for that reason. If the City believed it could not process Plaintiffs' petition or place it on the ballot because it is preempted, it should have rejected it on those grounds or sought a declaratory judgment on that issue, as the municipalities did in *Archstone Palmetto Park, LLC v. Kennedy*, 132 So.3d 347 (Fla. 4th DCA 2014), and *City of Riviera Beach v. Riviera Beach Citizens Task Force*, 87 So.3d 18, 23–24 (Fla. 4th DCA 2012) (finding initiative was *not* preempted).

## VI.    Bond should not be the cost of holding an election.

The City argues that a bond should be the cost of holding a referendum election. This makes no sense. If the Court grants the Motion, the City will not be required to hold an election straightway, or perhaps ever. *See* Motion at 14–15. The cost of an election is therefore not "proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FRCP 65(c). A small bond or none at all is appropriate in this case.

## VII.    The City's response underscores why the trial should be advanced and consolidated with the preliminary injunction hearing.

Finally, the City's response highlights how there are very few dispositive factual disputes in this case. Most of the issues turn on legal questions. And the City has control over or access to the relevant documents and knowledge, meaning it needs no discovery to present its defense. For all these reasons, the trial should be advanced and consolidated with the preliminary injunction hearing.

Respectfully submitted June 18, 2026,

*/s/ Nicholas L.V. Warren*
Nicholas L.V. Warren (FBN 1019018)
Caroline A. McNamara (FBN 1038312)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
cmcnamara@aclufl.org
dtilley@aclufl.org

Anthony F. Sabatini (FBN 1018163)
**Sabatini Law Firm P.A.**
1601 East 1st Avenue
Mount Dora, FL 32757
(352) 455-2928
anthony@sabatinilegal.com

*Counsel for Plaintiffs*

8