**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

SAVE THE GARDEN, BROOKS GIBBS,
KELLY MYER, JESSICA ANDUJAR,
TONATIUH TELLO, JILL GIBBS,
WILLIAM MATHIS, and JANICE BASLER,
     Plaintiffs,                        Case No. 8:26-cv-01662

v.

CITY OF CLEARWATER,
     Defendant.
_____/

**DEFENDANT, CITY OF CLEARWATER'S
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION</u>**

Defendant, the City of Clearwater ("City"), moves to dismiss both counts of

Plaintiff's amended complaint (DE 7) for failure to state a cause of action under

Federal Rule of Civil Procedure 12(b)(6).

**<u>The Amended Complaint</u>**

The amended complaint contains two counts. (DE 7.) Count I is an action for

declaratory judgment under Florida law. The gist of this claim is that the City Clerk

violated the City Charter by determining that certain signatures were not valid and

could not be counted. (DE 7 at pp. 12-13.)

Count II is a claim under 42 U.S.C. 1983 based on an alleged violation of

Plaintiffs' free speech and associational rights under the First Amendment. (*Id.* at p.

13.) Specifically, Plaintiffs allege that Section 6.04 of the City Charter is facially

1

invalid because it requires the five petitioners' committee members to be voters of the City.

### Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) tests the legal sufficiency of the complaint. In evaluating a motion to dismiss, the Court must determine whether the complaint contains sufficient factual allegations to state a claim for relief that is plausible on its face and satisfies the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires a plaintiff to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). In reviewing the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations as true and construe those allegations in the light most favorable to the plaintiff. *See Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

Although the pleading standard under Rule 8 does not require detailed factual allegations, it requires substantially more than mere labels, conclusions, or formulaic recitations of the elements of a cause of action. In *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), the Supreme Court explained that a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Likewise, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court held that a complaint must allege sufficient facts to state "a claim to relief that is plausible on

2

its face." A claim is facially plausible only when the plaintiff pleads factual content that permits the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

While the Court must accept factual allegations as true at the pleading stage, the Court is not required to accept legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555-56. Conclusory assertions devoid of supporting factual allegations are insufficient to survive dismissal. Iqbal, 556 U.S. at 678. Thus, a complaint must contain enough factual matter to raise a right to relief above the speculative level and to "nudge[]" the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. Where the allegations fail to plausibly suggest entitlement to relief, dismissal under Rule 12(b)(6) is appropriate. *Id*. at 558.

Accordingly, to avoid dismissal, a plaintiff must allege sufficient factual content to permit the Court to reasonably infer that the defendant is liable for a legally cognizable harm. Although the Court draws reasonable inferences in the plaintiff's favor, unsupported legal conclusions and conclusory allegations are not entitled to an assumption of truth. A complaint states a claim only where the alleged facts plausibly establish more than the mere possibility of liability. *Iqbal*, 556 U.S. at 679.

3

<u>**Argument**</u>

1. **Count I fails to state claim for declaratory judgment under Florida law because the amended complaint, on its face, shows that the petition did not obtain the number of signatures required**

   Count I seeks declaratory relief under Florida law. Plaintiffs allege that they submitted a total of 8,051 signatures to the City. (DE 7 at 31.)  The amended complaint also alleges the petition needed at least 7,067 signatures of voters in the City to be sufficient. (DE 7 at 18.)

   The amended complaint also states that 4,306 of the total 8,051 signatures were gathered before October 7, 2025. (DE 7 at 43.) According to Plaintiffs, these 4,306 signatures were improperly rejected by the City Clerk on grounds outside of Section 6.05 of the City Charter, which provides the only proper grounds for rejecting signatures. (*Id.* at 43-46.)

   Count I also claims the Charter was violated on other grounds. However, if the 4,306 pre-October 7 signatures were properly excluded from the valid signature count, there is no live controversy. Without the 4,306 signatures, it is mathematically impossible for Plaintiffs' petition to be sufficient.

   Since Plaintiffs submitted a total of 8,051 signatures, only 3,745 signatures remain if the 4,306 pre-October 7 signatures were properly excluded. Therefore, even if every one of the 3,745 signatures is valid, the petition failed to obtain the 7,067 signatures required.

Here, the amended complaint itself shows that the pre-October 7 signatures could not be counted under the City Charter as a matter of law. Under Section 6.04 of the Charter, the petition process did not commence until October 7, 2025, as a matter of law. Because Section 6.04 requires the petition process to be commenced before signatures can be collected, the 4,306 signatures collected before the petition process started on October 7 cannot be counted.

Section 6.04 of the Charter, "Commencement of proceedings," controls how initiative petition proceedings are initiated. (DE 7 at 11.) It states in full:

> ***Any five voters may commence initiative*** or referendum proceedings by filing with the city clerk or other official designated by the council an ***affidavit stating they will constitute the petitioners' committee and be responsible for circulating the petition and filing it in proper form***, stating their names and addresses, specifying the address to which all notices to the committee are to be sent, and setting out in full the proposed initiative ordinance or citing the ordinance sought to be reconsidered.

Five of the Plaintiffs executed and submitted an affidavit, with the ordinance text, to the City Clerk on June 13, 2025. (DE 7 at 19; DE 7-1.) Exhibit 1 to the complaint includes a copy of the affidavit signed by all five of the initial proponents. (DE 7-1.) All five proponents stated under oath that each of them was a qualified voter of the City. (*Id.*) To be a qualified voter under the City Charter, an individual must be registered to vote as provided by state law.[i]

As admitted in the complaint, one of the five proponents, Ms. Andujar, was not a registered voter at the time the affidavit was executed and filed with the City Clerk. (DE 7 at 19-24) Relying on this affirmative statement made under oath by all five proponents, the City first learned on October 7 that the affidavit was false and Mr. Andujar was not a registered voter. (*Id.*) That same day, the City notified the proponents of this, and they later submitted two additional petitioners' committee affidavits signed by qualified voters. Ms. Andujar did not register to vote until after October 7, 2025. (DE 7 at 19-24) Therefore, there was no affidavit of five voters of the City until October 7. From June 13 to October 6, there were only four voters of the City who signed and filed the affidavit.

Section 6.04 specifies how proceedings are commenced: "Any five voters may commence initiative or referendum proceedings by filing with the city clerk or other official designated by the council an affidavit…." No initiative process existed until October 7, 2025. The signatures collected before then were not invalidated— they were collected before the petition process started.

Under Section 6.04, the petition form that must be used to gather signatures for a petition is only issued by the City Clerk after the affidavit and ordinance are filed. Thus, it is impossible to obtain signatures until the petition process has been commenced by *five* voters of the City filing the affidavit and ordinance text.

6

Based on the amended complaint's admission that Ms. Andujar was not a registered voter until after October 7 (DE 7 at 23), the petition process did not commence on June 13, or at any point before the additional affidavits were filed on October 7. (*Id.*) Therefore, the signatures gathered from June 13-October 6 were simply not part of the petition process that commenced October 7.

Plaintiffs' remaining allegations that the City violated the Charter cannot overcome the fact that a mere 3,745 signatures were collected during the petition process that commenced October 7. Even assuming all 3,745 are valid, Plaintiffs only collected around 50% of the 7,067 signatures required for the petition to be sufficient. (DE 7 at 18.)

Based on Plaintiffs' own allegations in the complaint and the documents attached as exhibits to the complaint, the petition was insufficient for failure to obtain enough signatures. The petition process ended in May 2026, when the City Council approved the Clerk's certification of that the petition (as supplemented) was insufficient.

The relief sought by Plaintiff is declaratory and injunctive relief that assumes Plaintiffs' petition process is still ongoing and/or entitled to proceed through the other steps provided in the Charter (including the last step, a referendum election). Because Section 6.06 of the Charter explicitly states that only one supplemental petition can be filed, no other signatures can be collected for this petition.

It follows that there is no actual, present controversy between the parties or real practical need for a declaration. *Montgomery v. Dep't ofHealth & Rehab. Services*, 468 So. 2d 1014  (Fla. 1st DCA 1985); *Ferreiro v. Philadelphia Indem. Ins. Co.*, 928 So. 2d 374, 377 (Fla. 3d DCA 2006). Since there is no live controversy, as demonstrated by the amended complaint itself, Count I fails to state a cause of action for declaratory judgment. This defect cannot be cured by amendment. Accordingly, leave to amend would be futile and Count I should be dismissed with prejudice.

## 2. Cout II fails to state a claim that Section 6.04 of the City Charter violates the First Amendment by requiring the five petitioners' committee members to be voters of the City

Count II of the complaint alleges the Charter violates the First Amendment by requiring the members of a *petitioners' committee* to be voters of the City. (DE 7 at 66-70.) Specifically, Plaintiffs allege the Charter's "ban on non-voters being members of an initiative petitioners' committee" unduly burdens First Amendment rights by curtailing "debate and discussion of a ballot measure" and "limiting [their] ability to band together with others—including non-voters—to advance citizen initiatives." (DE 8 at 7.)

Plaintiff cannot find support for Count II in the case law that applies to registered voter requirements for mere petition circulators. *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999); *Meyer v. Grant*, 486 U.S.

414 (1988) (striking down state statute criminalizing payment of petition circulators).

The case law that applies to circulators in the First Amendment context does not apply—directly or by analogy—to the official proponents of an initiative, such as the members of a petitioners' committee. The City Charter regulates petitioner committee members only minimally and the registered voter requirement does not violate the First Amendment as a matter of law.

### a. The City Charter does not require petition circulators to be registered voters

Section 6.04 of the Charter requires the five members of a *petitioners' committee* to be voters. (*Id.*) The remainder of the paragraph speaks to the content of the affidavit they must file to commence proceedings. (*Id.*)

On its face, Section 6.04 does not impose a voter registration requirement on petition circulators. It requires the petitioners' committee affidavit to state the committee will be "responsible for circulating the petition and filing it in proper form." *Id.* This speaks to the official role the petitioners' committee plays in the initiative process. The fact that the committee is "responsible for" circulating the petition does not translate into a requirement that only registered voters (the committee members, or otherwise) are allowed to circulate petitions.

9

Further, Section 6.05(c) specifically applies to petition "circulator[s]." Nothing in this subsection restricts circulators to registered voters. The use of the term "circulator," rather than "petitioners' committee," shows that Section 6.04 does not restrict who can collect signatures. If the only people who could circulate petitions were committee members, there would be no reason to call them something different in Section 6.05(c).

Even if the "responsible for circulating" language could be read that way, it is not the only reasonable reading. Another reasonable interpretation of "responsible for circulating" is that the committee members have ultimate or oversight responsibility for the petition-circulation process, as the official proponent of the initiative.

It is well-established that a "statute should be interpreted in a way that avoids placing its constitutionality in doubt." *West Virginia v. United States Dep't of the Treasury*, 82 F.4th 1068, 1086 (11th Cir. 2023) (citations omitted) ("[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality."). Therefore, "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' [courts] are obligated to construe the statute to avoid such problems." *Id.* (citations omitted).

10

The Charter cannot be interpreted in a way that renders it an unconstitutional restriction on petition circulation. A reasonable alternative interpretation—that it refers to ultimate or oversight responsibility—is "fairly possible." *Id.* That is the interpretation that must be applied.

**b. The First Amendment framework for petition circulators under *Meyers* and *Buckley* is inapplicable to initiative proponents**

The Eleventh Circuit has consistently held that "regulations protecting the integrity of the initiative process are 'subject to strict scrutiny only in certain narrow circumstances.'" *Fla. Decides Healthcare, Inc. v. Fla. Sec'y of State*, No. 25-12370, 2025 LX 353753 (11th Cir. Sep. 9, 2025) (citing *Biddulph v. Mortham*, 89 F.3d 1491, 1500 (11th Cir. 1996)). In this context, strict scrutiny review of a regulation is "content based or had a disparate impact on certain political viewpoints," is enforced "in a discriminatory manner," or amounts to an impermissible burden on "the free exchange of ideas about the objective of an initiative proposal.'" *Id.* (citing *Biddulph*, 89 F.3d at 1500.

The Eleventh Circuit has concluded that *Meyer* and *Buckley* require "strict scrutiny of a law regulating the initiative process ***only*** if the challenged law '***substantially restricts political discussion*** of the issue [the sponsor] is seeking to put on the ballot." *Id.* "If the regulated conduct is ***not inherently expressive***, then the

11

residency and citizenship requirements ***need only be reviewed for a rational basis.***"

*Id.*

In *Fla. Decides Healthcare,* the Eleventh Circuit concluded strict scrutiny under *Meyer* and *Buckley* did not apply to Florida's recent legislation requiring petition circulators for sate petitions to register as circulators if they gather more than 25 signatures, imposing residency requirements, and other regulations. *Id.* The court reasoned that the statute's "residency and citizenship requirements do ***not restrict*** any ***speech elements*** of the petition-circulation process. Instead, they only regulate who can 'collect signatures or initiative petitions.'" Because this does not substantially restrict political discussion, rational basis review applied. *Id.*

Here, the *only* regulation the City Charter imposes on circulators is the requirement to submit an affidavit with collected signatures. That requirement has not been challenged. For these reasons, the case law dealing with circulators is irrelevant.

    **c. Section 6.04's language is the same as a Nevada statute that has been found likely to be upheld on the merits in a First Amendment challenge**

In March 2026, the Nevada District Court denied a motion for a preliminary injunction in a First Amendment challenge to an identical provision in Nevada's local initiative statute. *Greer v. Aguilar*, No. 2:25-cv-025, 2026 U.S. Dist. LEXIS 42821, at *1-2 (D. Nev. Mar. 3, 2026). Like the City Charter, the Nevada statute

requires five local registered voters to sponsor the initiative petition and for those voters to be residents of that county or city in question:

| Nev. Rev. Stat. § 295.095(1) | City Charter Section 6.04 |
| --- | --- |
| "Any five registered voters of the county may commence initiative or referendum proceedings by filing with the county clerk an affidavit stating they will constitute the petitioners' committee and be responsible for circulating the petition and filing it in proper form, stating their names and addresses and specifying the address to which all notices to the committee are to be sent, and setting out in full the proposed initiative ordinance or citing the ordinance sought to be reconsidered." | "Any five voters may commence initiative or referendum proceedings by filing with the city clerk or other official designated by the council an affidavit stating they will constitute the petitioners' committee and be responsible for circulating the petition and filing it in proper form, stating their names and addresses, specifying the address to which all notices to the committee are to be sent, and setting out in full the proposed initiative ordinance or citing the ordinance sought to be reconsidered." |

Like the Plaintiffs here, in *Greer*, the proponent argued he was likely to succeed on his First Amendment claim, urging it was subject to strict scrutiny. *Id.* The court disagreed. In rejecting this argument under Ninth Circuit precedent, the court explained that "[t]he First Amendment permits states 'considerable leeway' in regulating the electoral process, provided their choices do not produce 'undue hindrances to political conversations and the exchange of ideas.'" *Id.* at *2. Therefore, in this context, "only where the challenged law severely burdens the ability to place an initiative on the ballot" must it "be narrowly tailored and advance a compelling state interest." *Id.* Absent such a sever burden, courts apply a "'less

13

exacting' standard of review, and the law will be upheld if it serves 'an important regulatory interest.'" *Id.* (citations omitted).

*Greer* distinguished the First Amendment cases addressing circulators of petitions. *Id.* The act of circulating petitions involves core political speech. But residency, registration, disclosure, and similar restrictions on "official proponents of an initiative do not warrant strict scrutiny." *Id.* Therefore, the court rejected the proponent's reliance on the First Amendment framework in *Meyers* and *Buckley*, explaining:

> The cases Greer relies on, such as *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008) and [*Buckley v. Am.*] do not alter this result. Those cases applied strict scrutiny and struck down residency and disclosure requirements on petition circulators—those who actually engage in direct voter contact—because such requirements unnecessarily restrict their speech and associational rights. *See, e.g.*, *Nader*, 531 F.3d at 1036. But the Ninth Circuit has distinguished those cases from residency requirements for those acting as an official proponent, noting that the official proponent is a unique, quasi-legislative role that the government may constitutionally restrict.

*Id.* at *7 n.32 (citing *Chula Vista Citizens*, 782 F.3d at 533).

Initiative proponents are treated differently because of their official role in the legislative process. *Id.* Because of that unique role, "states and cities may, wholly consistent with the First Amendment, require that those who seek to propose legislation…be electors' because official proponents 'play a special role with unique responsibilities and powers in the legislative process.'" *Id.*

14

Requiring official proponents to be voters in the relevant city or county serves important regulatory interests of protecting the integrity of the initiative process and ensuring that local initiatives have some minimal degree of local support. *Id.* Additionally, government has an "interest in limiting participation in that government to those who are within the basic conception of a political community," "defin[ing] its political community[.]" *Greer*, 2026 U.S. Dist. LEXIS 42821, at *9.

Significantly, the Nevada statute's voter requirement for committee members was logically related to those regulatory interests: "[t]he elector requirement operates to ensure that those who exercise this unique legislative power are members of the political community who will be bound by the proposed initiative should it become law." *Id. See Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 536 (9th Cir. 2015) ("plaintiffs rely upon cases that prohibit the disclosure of the identity of petition *circulators*—a role distinct from that of an initiative proponent or a petition signatory." (emphasis added).)

Even under the greater level of scrutiny that applies in the Ninth Circuit, Nevada's registration requirement with the same language as the City Charter easily passed constitutional muster.

Under the test the Eleventh Circuit recently reiterated in *Fla. Decides Healthcare*, requiring petitioners' committee members to be voters in the City is subject to rational basis review. The requirement to register does not substantially

15

restrict discussion of the issue an initiative proponent seeks to advance. The requirement to form a committee of five voters in the City does not impermissibly burden the ability to engage in the initiative process. Members of a committee remain free to engage in discussion and advocacy of the initiative. Individuals who are not registered voters remain free to do the same.

Therefore, the voter requirement for committee members n Section 6.04 is not facially invalid under the First Amendment. Count II fails to state a cause of action, and amendment would be futile. Dismissal should be with prejudice.

## Conclusion

Plaintiffs have failed to state a cause of action against the City. As both counts of the amended complaint contain defects that cannot be cured, they should be dismissed with prejudice.

## Local Rule 3.02 Certification

I certify that this certification will be supplemented as provided in Rule 3.01(g)(3) as the undersigned was unable to confer with opposing counsel regarding this motion before the time for filing.

*s/Elizabeth W. Neiberger*
Elizabeth W. Neiberger
FL Bar No. 70102
BRYANT MILLER OLIVE P.A.
One S.E. Third Avenue, Suite 2200
Miami, FL 33131
(305) 374-7349 (Tel)
(305) 374-0895 (Fax)

16

eneiberger@bmolaw.com
akilpatrick@bmolaw.com
*Lead Counsel for Defendant, City of Clearwater*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 24, 2026, this document was filed electronically with the clerk of the court by using the CM/ECF system, and a copy was served by email on the persons identified on the Service List below.

*s/Elizabeth W. Neiberger*
Elizabeth W. Neiberger

**Service List**

Nicholas L.V. Warren, Esq.
Daniel B. Tilley, Esq.
ACLU Foundation of Florida
4343 West Flagler Street, Suite 400
Miami, FL 33134
nwarren@aclufl.org
dtilley@aclufl.org
*Attorneys for Plaintiffs*

17